Township of Ridley, Appellant *v.* Ridley Arms, Inc. and Leonard Klorfine, t/a Ridley Brook Associates, Appellees.

Ridley Arms, Inc. and Leonard Klorfine, t/a Ridley Brook Associates, Appellants *v.* Township of Ridley, Appellee.

Argued April 9, 1985, before Judges ROGERS, MAC-PHAIL and PALLADINO, sitting as a panel of three.

*Peter J. Rohana, Jr.,* for appellant/appellee, Township of Ridley.

*Robert B. Surrick, Surrick and Gollatz,* for appellees/appellants, Ridley Arms, Inc. and Leonard Klorfine, t/a Ridley Brook Associates.

OPINION BY JUDGE ROGERS, June 14, 1985:

These are the cross-appeals of the owners of an apartment complex called the Ridley Brook Apartments (Ridley Brook) and of Ridley Township from a final decree in equity of the Court of Common Pleas of Delaware County. Ridley Brook appeals because the common pleas court rejected its challenge to the validity of the Ridley Township solid waste removal ordinance and refused to order a refund of waste removal fees paid the township in the amount of $58,156.67. Ridley Township appeals because the court ordered it to pay Ridley Brook $22,929.00 as reimbursement for sums Ridley Brook had paid a private hauler to remove its trash.

Ridley Brook owns a 241-unit apartment complex situated in Ridley Township. The complex has 226

parking spaces. When Ridley Brook purchased the property in 1977, the township waste removal ordinance was already in effect and provided:

All ashes and rubbish accumulated in any single-family or two-family house, apartment or dwelling in the Township of Ridley shall be collected, conveyed and disposed of by the township, and the cost of such service shall be paid for as provided in the schedule of fees set forth in §61-6 hereof, by the person owning the building or buildings from whence the ashes and rubbish have been accumulated.

All garbage accumulated in any single-family or two-family house, apartment or dwelling in the Township of Ridley shall be collected, conveyed and disposed of by the township.

The ordinance also exempts commercial and industrial enterprises such as shopping centers, supermarkets, restaurants and manufacturing plants from the obligation to take the township service because the refuse generated by these concerns would unduly burden the township's sanitation facilities.

The township trash collection fee, which is included on the township's local property tax bill, is determined annually by dividing the township Sanitation Department's budget by the number of dwelling units and nonexempt commercial properties entitled to receive the township's sanitation services.

When Ridley Brook purchased the complex, it was being served by a private trash hauling contractor, which supplied Ridley Brook with five dumpsters, six cubic yards apiece, and removed the trash three times a week.

The township customarily collected refuse from apartment buildings twice a week and required the owners of apartment buildings to provide their own

dumpsters, with an allowable maximum capacity of two and one-half cubic yards apiece.

Ridley Brook's weekly production of trash was 90 cubic yards. If the township had performed the trash collecting, Ridley Brook would have had to place 23 maximum capacity dumpsters on its already over-crowded parking lot. For this reason, Ridley Brook continued the contract with the private firm and did not use the township's refuse removal service. From 1977 to 1981, Ridley Brook paid the private firm a total of $22,929.00 for the garbage collection service. During the same period, it paid the township a total of $58,156.6700 in collection fees under the ordinance.

Ridley Brook brought this suit in equity in 1979, challenging the constitutionality of the ordinance. The trial judge found the waste removal ordinance to be constitutional. The court refused to order a refund of the fees paid of $58,156.6700, but it ordered the township to pay Ridley Brook $22,929.00, the amount paid out for the private trash collection services.[1]

Turning first to Ridley Brook's appeal, Ridley Brook contends that the challenged ordinance violates its right to equal protection because it provides disparate treatment for apartment complexes which are subject to it and industrial-commercial properties which are exempt. Since the ordinance classifies property along, *inter alia,* economic lines and since it does not impinge upon a fundamental interest or operate to the disadvantage of a suspect class, we employ

---

[1] We note that Ridley Brook, in exceptions to the trial court's decree nisi, charged that the court failed to consider the constitutional issues raised above. The trial court, after duly considering the parties' exceptions and memoranda, ruled on September 23, 1983, that it was adopting its previous decree dated July, 1982. We read the trial court's accompanying September 23, 1983 opinion as one rejecting Ridley Brook's constitutional claims as being without merit.

the traditional equal protection analysis of minimal scrutiny, that is, we will sustain the constitutionality of the challenged ordinance if it classifies properties "in a manner rationally related to legitimate governmental objectives." *Latella v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 14, 20, 459 A.2d 464, 468 (1983).

The exemption of commercial-industrial enterprises from township trash collection services, leaving them to find private services, promotes the legitimate governmental interest of relieving the township facilities and equipment of the task of removing "the great amount of refuse being accumulated by . . . [the industrial-commercial properties]."[2] Ridley Brook has not overcome the strong presumption which exists in favor of the challenged legislation by a showing that the ordinance "clearly, plainly and palpably violated the Constitution." *Wallace v. Unemployment Compensation Board of Review,* 38 Pa. Commonwealth Ct. 342, 347, 393 A.2d 43, 46 (1978).

Ridley Brook next asserts that the fees imposed under the ordinance are not reasonably related to the township's costs of the municipal service. A municipality may not use its power to collect fees for service as a means of raising revenue for other purposes. *Golla v. Hopewell Township Board of Supervisors,* 69 Pa. Commonwealth Ct. 377, 452 A.2d 273 (1982); *Raum v. Board of Supervisors of Tredyffrin Township,* 29 Pa. Commonwealth Ct. 9, 370 A.2d 777 (1977). The enabling legislation for the Ridley ordinance, Section 1502 of the First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §56527, authorizes a township to provide municipal trash collection service and to impose reasonable fees for the service. Although Ridley Brook correctly points out

---

[2] Ridley Township Refuse Collection Ordinance, §61-3D.

that a municipal ordinance is void to the extent that it is inconsistent with its enabling legislation, *City of Sunbury v. Karpinski*, 70 Pa. Commonwealth Ct. 473, 453 A.2d 1062 (1982), we find no evidence in the record that the ordinance, on its face or as applied to Ridley Brook, imposes an unreasonable fee.

Ridley Brook did not use the municipal trash collection service during the years 1977-1981 so that its argument that the fees charged by the township for those years greatly exceeded the township's actual cost of service is based on speculation and not on fact. The data upon which it depends is derived from the cost of servicing other apartment buildings, not parties to this suit. Moreover, the trial judge noted that the differences between the fees charged in one of the years ($70.00 per unit) and the cost of providing service to other apartment complexes in Ridley Township ($19.38 to $30.00 per unit) might be attributable to indirect costs such as administrative expenses and to investment in equipment and facilities. A review of the Sanitation Department's budget for the years 1977-1981 shows that total fees charged by the township approximate the township's total costs for providing the service.[3]

Ridley Brook also contends that the ordinance, as applied to its situation, is unconstitutional because it threatens the public health and safety. Ridley Brook adduced evidence to the effect that there are rodents in the neighborhood of its apartments, that rodents can readily jump into small containers specified by the township, and that trash collection would need to

| [3] Year | Fees Charged | Actual Costs |
|------|------|------|
| 1977 | $467,255.00 | $476,385.00 |
| 1978 | 457,616.75 | 457,803.00 |
| 1979 | 493,118.00 | 643,087.00 |
| 1980 | 649,158.00 | 694,531.00 |
| 1981 | 813,223.00 | 819,608.00 |

be more than the twice a week provided by the township to prevent the small dumpsters from overflowing. The trial judge was sympathetic to these concerns but concluded that they could be met by self help in the form of private sector control services.

Finally, Ridley Brook argues that the ordinance, as applied to its property, is a confiscatory exercise of the township's police power. In *Cott Beverage Corp. v. Horst*, 380 Pa. 113, 118, 110 A.2d 405, 407 (1955), the Supreme Court explained that "a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive, or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained." We cannot say that an ordinance which provides for municipal direct trash collection service to all residential users, as the Ridley ordinance does, is confiscatory because it does not exactly fit the needs of one user. Ridley Brook complains that if it used the township's services, it would have to place more dumpsters than its private collector requires on its already overcrowded parking lot. However, these conditions, including the fact that the ordinance was there in place, existed when Ridley Brook purchased the property in 1977; and Ridley Brook, as had its predecessor, declined the municipal services, and used the private collection. We agree with the trial court's conclusion that the record does not demonstrate that the ordinance is unconstitutional.

We turn to the township's appeal. The township correctly notes that Ridley Brook, in its complaint, did not claim reimbursement of its expenses for the use of a private contractor either in the statement of its cause or by prayer for relief. The township challenges the court's power to grant this relief under a

prayer for general relief. Although an equity court may grant broader relief than that specifically requested under the aegis of a prayer for general relief, *Sack v. Feinman,* 489 Pa. 152, 413 A.2d 1059 (1980), it may only grant relief " 'agreeable' to the case pleaded and proven. . . ." *Sigal v. Manufacturers Light and Heat Co.,* 450 Pa. 228, 232, 299 A.2d 646, 647 (1973), *quoting Dombrowski v. Philadelphia,* 431 Pa. 199, 245 A.2d 238 (1968). Ridley Brook did not plead a case for reimbursement and its proofs were directed solely to the asserted inappropriateness of the township's services to its needs. The order requiring reimbursement indeed seems to have surprised Ridley Township because it filed an exception to that aspect of the decree nisi.

As noted, Ridley Brook contended that the ordinance, as applied to it, is unconstitutional. Where one successfully sues in equity to strike down an ordinance or statute imposing a tax as unconstitutional, the remedy is ordinarily an order enjoining the collection of taxes. Ridley Brook, however, has asked for a refund of taxes which it had already voluntarily paid.

The historic principle on this subject is that one who has voluntarily paid taxes or fees to a municipal corporation is not entitled to a refund. McQuillin, *The Law of Municipal Corporations,* §49.62 (3d ed. 1982). Pennsylvania has, however, by Section 1 of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. §5566b, afforded persons claiming to have paid to a political subdivision any taxes or "other moneys to which the political subdivision is not legally entitled" the right to refund if they file a written and verified claim within two years of payment. Ridley Brook seems not to have filed a claim under the statute. But Ridley Township has not invoked the statute as a bar

to Ridley Brook's claim for refund; so that we have not, as we could not, employed the statute in the decision of this case. We observe nevertheless that Ridley Brook's claim for a refund has been advanced in equity and that equity ideally follows the law.[4]

We reverse the final decree insofar as it directs the Township of Ridley to reimburse Ridley Brook $22,929.00 paid for private solid waste removal; we affirm the final decree in all other respects.

ORDER

AND Now, this 14th day of June, 1985, we reverse the final decree insofar as it directs the Township of Ridley to reimburse Ridley Brook $29,929 paid for private solid waste removal; we affirm the final decree in all other respects.

---

[4] *First Federal Savings and Loan Association v. Swift*, 457 Pa. 206, 321 A.2d 895 (1974).