531 A.2d 414

**RIDLEY ARMS, INC. and Leonard Klorfine t/a Ridley Brook Associates, Appellants,**

v.

**TOWNSHIP OF RIDLEY, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1986.

Decided March 17, 1987.

As Corrected Sept. 28, 1987.

Robert B. Surrick, Media, for appellants.

Peter J. Rohana, Jr., Media, for appellee.

Before NIX, C.J., and FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

FLAHERTY, Justice.

Ridley Arms is a 241 unit apartment complex located in Ridley Township, Delaware County, Pennsylvania. In 1978 Ridley Arms brought an action in equity challenging the constitutionality of the Ridley Township Refuse Collection Ordinance. The relief sought was that the court enjoin Ridley Township from collecting any fees from Ridley Arms pursuant to its refuse collection ordinance and that the court order the refund of moneys paid to the township for refuse collection which was never performed. The Court of Common Pleas of Delaware County upheld the constitutionality of the ordinance, but ordered a partial refund of moneys paid to the township. The court reasoned that although the taxpayer had not met its burden of establishing that the classifications were not reasonably related to the purpose of the statute, since this case involved a charge for services rendered, and since the taxpayer never received the service, the taxpayer was entitled to a refund of taxes in the amount of moneys it paid to a private hauler for removing its refuse.[1] The parties cross-appealed to Commonwealth Court, 90 Pa.Cmwlth. 143, 494 A.2d 870, which affirmed that part of the chancellor's decree upholding the constitutionality of the statute and reversed that part of the decree requiring repayment. Ridley Arms filed a Petition for Allowance of Appeal and we granted allocatur.

The township ordinance at issue in this case, No. 1005, provides, in pertinent part:

SECTION III. ADMINISTRATION

A. All ashes and rubbish accumulated in any single family or two-family house, apartment dwelling, in the Township of Ridley, shall be collected, conveyed and disposed of by the Township, and the cost of such service shall be paid for as provided in the schedule of fees set forth in Section VI hereof, by the person owning the

---

1. The Ridley Township tax statement breaks down the tax to be paid into various categories, including a special category for "Rubbish" and specifies an amount to be paid for refuse collection service.

building or buildings from whence the ashes and rubbish have been accumulated.

B. All garbage accumulated in any single-family or two-family house, apartment dwelling in the Township of Ridley shall be collected, conveyed and disposed of by the Township.

*     *     *     *     *     *

D. By reason of the great amount of refuse being accumulated by shopping centers, supermarkets, manufacturing plants, hotels and restaurants, the collection of which would unduly burden the facilities of the Township, all shopping centers, super markets, manufacturing plants, hotels and restaurants shall dispose of their own refuse. . . .

SECTION V.   COLLECTION PRACTICES

*     *     *     ⁙     *     *

B.   Limitation on Quantity:

1.   It is the intent of the ordinance that the reasonable accumulation of refuse of each family for the collection period will be collected for the standard charge.   The Health and Sanitation Committee of the Township may refuse to collect unreasonable accumulations of refuse, or in its discretion, may make an additional charge for such amounts.

2.   It is the intent of this ordinance that shopping centers, super markets, manufacturing plants, hotels and restaurants shall privately contract for and have their accumulation of refuse collected at reasonable times so that there shall not be an undue or unreasonable amount accumulated prior to collection.

The 241 apartment units of the Ridley Arms complex produce approximately ninety (90) cubic yards of refuse weekly.   Since the township is unable to provide refuse pickup more than twice weekly, and since its trucks are able to manipulate refuse containers not exceeding 2.5 cubic yards in size, Ridley Arms, were it to utilize the township

collection services, would be required to purchase eighteen such trash containers or to permit its tenants to place their refuse out for pickup in individual containers. Instead, Ridley Arms has contracted with a private refuse hauler to remove refuse from the complex three times a week from five dumpsters each having a capacity of six cubic yards, provided at no cost by the private contractor. Between 1977 and 1981 Ridley Arms paid this private contractor $22,929.00 for its services, and it also paid the Township of Ridley $58,156.67 [2] in fees pursuant to the refuse collection ordinance. The rubbish fee is part of the annual tax bill sent out to taxpayers in the township.[3]

Ridley Arms is reluctant to utilize the township services because it would be more costly to purchase the small dumpsters, because utilizing the smaller dumpsters would eliminate some parking spaces,[4] and because it fears that the smaller containers would constitute an attractive nuisance for children, would lead to a rodent infestation, and would be difficult to secure because of their relative ease of

**2.** This is the figure used by Commonwealth Court, but the actual amount paid to the township would seem to be somewhat less because of the use of a discount billing system in which the total amount due is reduced by a certain percentage if the bill is paid within certain time limits.

**3.** Approximate amounts paid for refuse collection to the Township of Ridley:

| | | |
|---|---|---|
| 1977 | $ 2,414.20 | (4 months) |
| 1978 | $ 9,447.20 | |
| 1979 | $ 9,640.00 | |
| 1980 | $13,255.00 | |
| 1981 | $16,367.27 | |

Amounts paid to Nu-Way, Ridley Arms' private refuse hauler:

| | |
|---|---|
| 1977 | $ 1,236.00 |
| 1978 | $ 4,944.00 |
| 1979 | $ 5,234.00 |
| 1980 | $ 6,091.00 |
| 1981 | $ 5,424.00 |

**4.** Ridley Arms consists of 241 units with 226 parking spaces. The owner of the complex testified that he purchased the complex in 1977 and that the complex was built within the requirements of the zoning regulations which existed at the time. He also stated that having fewer than two spaces per unit is undesirable.

mobility.[5] Ridley Arms avoids all of these problems by utilizing its private refuse contractor, which over a five year period, has provided better service, collecting three times a week instead of twice, at less than half the cost of the township service.

Reduced to its essentials, Ridley Arms' arguments are basically two: (1) that the refuse ordinance is unconstitutional under the Equal Protection Clause of the United States Constitution and Article III, Section 32 of the Pennsylvania Constitution because it is based on an impermissible classification; and (2) that the ordinance violates the First Class Township Code in that it imposes unreasonable fees and charges.

Ridley Arms' first claim, stated in greater detail, is that its classification of residential and commercial users has no rational basis and is not reasonably related to the governmental purpose of safe and economical collection of refuse. Our standard of review for equal protection challenges to taxing and police power legislation is well-established:

It has often been stated that uniformity and equal protection clause challenges of taxing legislation, like challenges to the exercise of the police power where the legislature also enjoys broad discretion, are subject to review according to the "rational basis" standard. See *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985) and cases cited therein. *See also Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981). The classification at issue is analyzed "to determine whether it is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation." *Snider v. Thornburgh*, 496 Pa. at 168, 436 A.2d at 597. The burden rests upon the taxpayer to demonstrate that the classification is unreasonable, *F.J.*

---

5. The chancellor found as facts that the smaller dumpsters present "a serious hazard" and that the township's "refuse collection service alone is too infrequent and could cause a serious health problem...." The chancellor also found that the township's service "is inadequate to service a multifamily, high density apartment complex such as Plaintiffs." Findings of Fact 44–49.

*Busse Co. v. Pittsburgh,* 443 Pa. 349, 279 A.2d 14 (1971), a burden which has been characterized as "heavy" *Amidon v. Kane,* 444 Pa. 38, 279 A.2d 53 (1971). A challenger must overcome the presumption of constitutionality afforded all acts of the General Assembly, 1 Pa.C.S. § 1922(3), and legislation will not be declared unconstitutional unless it "clearly, palpably, and plainly violates the constitution." *Snider v. Thornburgh,* 496 Pa. at 166, 436 A.2d at 598.

*Commonwealth v. Buckley,* 510 Pa. 326, 329, 508 A.2d 281, 282 (1986).

Placing the heavy burden of demonstrating unreasonableness on the challenger, as we must, and presuming that the ordinance is constitutional unless it "clearly, palpably and plainly" violates the constitution, our first task is to examine the reasonableness of the classification with respect to the purpose of the legislation. Facially, the classification is reasonable with respect to its purpose in that it provides a refuse collection service, presumably to promote public health and safety, for those least able to bargain for favorable private rates (individual homeowners), while excluding those who might overburden the system (commercial establishments) were they included. Actually, however, Ridley Arms has established in the proceedings below that the township collects refuse from 205 commercial establishments who are exempt from the refuse ordinance and charges them the rate paid by homeowners.

These facts raise a question as to the reasonableness of the classification in relation to the purpose of the ordinance, and they also raise a question as to whether the classification "rests upon a difference having a fair and substantial relation to the object of the legislation." The governmental purpose of the classification, as Commonwealth Court observed, was to relieve the township of the job of removing the great amount of refuse generated by commercial properties. However, if having this purpose, the township then proceeded to collect refuse from the same properties it sought to avoid, the relationship between the classification and the purpose is at least suspect.

■ Showing that the classification is of questionable reasonableness, however, is not enough; rather, Ridley Arms was required to show that the classification is in fact unreasonable. Since Ridley Arms raised questions about the reasonableness of the classification but did not actually demonstrate the unreasonableness, we are compelled to agree with the chancellor's conclusion that Ridley Arms did not provide "sufficient information to find that the collection fees bear no reasonable resemblance to the costs of providing the services," and with Commonwealth Court's conclusion that on this record Ridley Arms has not met its burden of showing that the ordinance violates the requirements of the Constitution.

■ Ridley Arms' second challenge is that the ordinance violates the First Class Township Code, 53 P.S. 56527 (1981), which provides that the township has the power:

> To make regulations relative to the accumulation of manure, compost and the like; to prohibit accumulation of ashes, garbage, rubbish and other refuse materials upon private properties including the imposition and collection of *reasonable fees and charges* for the collection, removal and disposal thereof. . . .

(Emphasis added.) Ridley Arms claims, and we agree, that the payment of approximately $58,000 to government for the performance of services which can be, and actually were provided by the private sector for approximately $23,000, less than half the amount charged by government, is not "reasonable," and is therefore in violation of the First Class Township Code.[6]

Our determination today that the Ridley Township refuse fee for apartment owners is unreasonable does not reduce the broad latitude which government traditionally has en-

6. Ridley Arms also established at trial that although apartments in Ridley Township pay refuse fees equivalent to 18.9% of the revenue received each year from these fees, the costs of collecting refuse from apartments was between 5% and 9.5% of revenue. Moreover, the chancellor found as a fact that the township conceded that its actual cost per unit in 1981 for collecting refuse from apartment complexes ranged from $19.99 to 30.00. The refuse collection fee charged residential units in 1981, including apartments, was $70.00 per unit.

joyed under an Equal Protection analysis in determining which services it deems essential to provide for its citizens. Nor do we today reduce the broad latitude which government has enjoyed for at least 50 years in making classifications to implement its legitimate purposes. We do, however, observe that governmental powers have always been circumscribed by a requirement of reasonableness in relation to purpose, and here, by a statutory requirement of reasonableness of cost.

■ For many years now, and increasingly, taxpayers have adopted a fatalistic view that no matter how outrageous, how costly, how uncompetitive a government activity is, if it is sponsored by government, it is not open to successful challenge. But governmental systems and classifications which require the payment of taxes or the curtailment of freedoms were never meant to be regarded as unchallengeable, regardless of their fairness, utility and reasonableness. To the contrary, government in this Commonwealth and this nation has always been conceived of as the provider of safe and efficient service, not as a repository for exorbitant costs. If government cannot provide services at least of a quality and at a cost commensurate with similar services provided by private enterprise, it is, by definition, unreasonable to utilize tax dollars for that purpose. That many have lost sight of that patently obvious idea is as unfortunate as it is surprising.

■ For the foregoing reasons, the order of Commonwealth Court is vacated. Any and all segments of the Ridley Township Refuse Collection Ordinance which impose any fees, taxes or charges are hereby declared void and of no effect by reason of the fact that the apportionment of costs is unreasonable in violation of Section 56527 of the First Class Township Code as applied to the appellants in this case; and the case is remanded to the Court of Common Pleas of Delaware County with directions to enter an Order directing the Township of Ridley to pay to Ridley

Thus, by either calculation, and allowing the higher costs to the township, the township collected twice as much from apartments as it cost to collect from apartments.

Arms, Inc. an amount equal to all refuse collection taxes paid to the township under the refuse collection ordinance since 1977, with interest.

Vacated and remanded.

NIX, C.J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

LARSEN and McDERMOTT, JJ., did not participate in the consideration or decision of this case.

NIX, Chief Justice, concurring.

I concur in the result reached by the majority because the fees and charges for refuse collection in this instance were not reasonable as required under the First Class Township Code, Act of June 24, 1931, P.L. 1206, art. XV, § 1502, cl. XXVII, *as amended,* 53 P.S. § 56527.

ZAPPALA, Justice, dissenting.

I respectfully dissent. In reversing the Commonwealth Court's decision, the majority has interpreted the Ridley Township Refuse Collection Ordinance ("Ordinance") in an illogical manner. They have also unnecessarily decided a constitutional question rather than merely considering whether the Ordinance was unreasonable under 53 P.S. § 56527.

In deciding whether the amounts charged by the Township to Ridley Arms were excessive, and thus, that the Ordinance was unreasonable under the First Class Township Code, 53 P.S. § 56527, there was no reason for the majority to analyze the Ordinance's constitutionality. "It is well settled that when a case raises both constitutional and non-constitutional issues, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds." *Ballou v. State Ethics Commission,* 496 Pa. 127, 129, 436 A.2d 186, 187 (1981) (footnote omitted).

This objection notwithstanding, I am not convinced that the treatment given to the Ordinance in conjunction with 53 P.S. § 56527 is correct. The majority's analysis of "reason-

able fees and charges", comparing only the payments made by Ridley Arms to the Township for the services and the payments made by Ridley Arms to the independent refuse collector, is too simplistic. Instead, a determination of whether a rate is unreasonable requires a comparison of the total costs to the Township of providing refuse collection to its residents, and the total fees taxed to the residents for such services.

The heavy burden of showing that this tax was unreasonable rested on Ridley Arms. *See, Amidon v. Kane,* 444 Pa. 38, 51, 279 A.2d 53, 60 (1971). To show this, Ridley Arms presented the testimony of the building owner and of an expert, a sanitary engineer. A review of this testimony indicates that the expert testified to a great extent about the sanitary implications of the Township's refuse collection, but testified very little about the costs. The testimony concerning costs by the expert consisted mainly of his bald conclusion that the Township's charges were unreasonable, and his opinion that its method of determining the price of refuse collection services was not equitable.

On this record, all that has been shown by Ridley Arms is that it cost more to pay the Township for refuse collection than to pay a private collector. To say that the tax is unreasonable solely for this reason is naive, for the Township, as a government, has other considerations associated with providing services that a private entrepreneur does not have—such as costs associated with bidding requirements and providing service to the entire community at a reasonable price.

Comparing costs encountered by the Township to those of a private contractor does not logically compel a finding of unreasonableness. In order to show the Township's costs were unreasonable, Ridley Arms should have been required to show that the rates charged exceeded the Township's costs. The record is void of such a showing and does not persuasively show that amounts charged by the Township were excessive. In fact, contrary to the tenor of the majority's opinion, which would lead one to believe otherwise, the record in this case shows that the Township

suffered losses each year in providing refuse collection to the community. For example, in 1979 the Township collected revenues for refuse collection in the amount of $493,-118.00, but the cost of providing the service was $643,087.00 —a deficit of $149,969.00. R., Exhibit "H". The deficits in other years were not as great, but significant.

Finally, the majority's solution to this dilemma is overly broad. Under their approach, any time a taxpayer could obtain services through the private sector at a lower price than that at which the municipality provided the services, he could challenge the tax as being unreasonable and prevail. In the instant case, it would allow the homeowners who also paid the rate to mount this same challenge and be successful. The majority's analysis would also allow a person whose child attended private school for less money than the school district taxed for public schools to challenge the tax as being unreasonable, thereby exempting himself from the tax and perhaps establishing a right to a tax refund.

The problem of refuse disposal is a municipal problem and calls for a municipal solution. By analyzing this case in a manner dealing only with the individualized impact of taxes and costs of one building, the majority has ignored this fact and set an overly broad precedent which will seriously impede the ability of municipal corporations to provide services such as refuse collection at reasonable costs to everyone in the community.