595 A.2d 742

**NATIONAL PROPERTIES, INC., Appellant,**

v.

**BOROUGH OF MACUNGIE, Appellee.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1991.

Decided July 19, 1991.

344

John D. Snyder, West Chester, for appellant.

Timothy J. Siegfried, Allentown, for appellee.

Before SMITH and PELLEGRINI, JJ. and BARBIERI, Senior Judge.

PELLEGRINI, Judge.

National Properties, Inc., (National) appeals an Order and Final Decree of the Lehigh County Court of Common Pleas (trial court) declaring the Borough of Macungie's (Borough) Ordinance No. 369, which provides for collection, convey-

ance and disposal of all refuse accumulated in the Borough as well as fees to be paid, to be constitutionally valid.

In 1985, the Borough enacted Ordinance No. 369 (the Ordinance) amending a prior ordinance.[1] Section 5–4002 of the Ordinance provides in relevant part:

(a) All refuse accumulated in the Borough shall be collected and disposed of *by the Borough;* provided, however, that the secretary *may require,* subject to the provisions set forth hereinafter, *the following persons to personally collect, convey and dispose of that refuse* in accordance with all regulations for collection, conveyance and disposal prescribed in this chapter or made by Council, or to pay such additional fees as may be required for the removal of that refuse:

(1) Any *person* whose accumulated refuse at each time of collection is [in] *excess of six (6) 21–gallon containers* or their equivalent by weight or volume, *if such collection constitutes an unreasonable burden upon the Borough's garbage collector;*

(2) Any commercial or industrial establishment whose refuse contains confidential material; and

(3) Any person whose refuse, by its size or nature, is difficult or dangerous to be collected by the Borough's garbage collector.

(b) The *cost* of the service for collection of refuse under this chapter ... *shall be borne and paid by the owner of the premises* from which the refuse is collected....

(734a–735a) (emphasis added).

Section 5–4001(3) of the Ordinance defines a "person" as any:

individual, partnership, corporation, association, institution, cooperative enterprise, municipal authority, federal government or agency ... or any other legal entity which

1. This Ordinance was originally enacted as Ordinance No. 316 in 1977, was subsequently recodified by Ordinance No. 330 of 1980, and amended by Ordinance 363 of 1984 and the present Ordinance No. 369 of 1985. (Reproduced Record pp. 114a–115a, 723a–742a).

is recognized by law as being subject to such rights and duties.

(734a).

The Borough itself does not operate a refuse disposal system, but entertains bids and contracts with a private refuse collector to remove and dispose of the refuse generated by the entities subject to the Ordinance.[2]  One of those entities subject to the Ordinance was National, which owns and, through a subsidiary, manages a 174 unit apartment complex known as Macungie Village Apartments located in the Borough.  It is the largest apartment complex in the Borough.  (157a).

National has for some time, without success, requested exclusion from the Ordinance so that it could obtain higher quality refuse removal service from a private contractor at a substantially lower cost then charged by the Borough.[3]  However, the Borough refused to allow National an exclusion stating that as 174 residential units, it did not meet the criteria for an exclusion since none of the apartments generated over six 21–gallon containers a week.  (155a–156a, 687a).

In 1981, National initiated an action in equity requesting an exclusion.  The trial court, in 1984, ruled that the Ordinance in effect at that time gave the Borough Secretary too much discretion in deciding who may be excluded since there were no guidelines or classifications in the Ordinance to guide the Secretary's decision.  (7a–20a).  The trial court gave the Borough 90 days to rewrite the provision or it would be struck down as an unconstitutional delegation of power.  (18a).

2.  During the relevant time period, bid specifications were drawn up, publicly advertised, and opened at a public meeting with the contract being awarded to the lowest responsible bidder.  (672a–673a, 765a–875a).

3.  Since 1978, National has repeatedly requested that the Borough Secretary grant it an exclusion.  However, the Borough denied each request.  (155a).  In 1981, 1985 and 1987, National presented formal requests directly to the Borough's Council which were denied each time.  (410a–411a).

The Borough complied and amended the Ordinance adding the language "if such collection constitutes an unreasonable burden upon the Borough's garbage collector." (730a–731a). Following this change in the Ordinance, National continued to unwillingly submit to the Borough's refuse collection service. *See* Footnote # 3. However, following the Pennsylvania Supreme Court decision in *Ridley Arms, Inc. v. Ridley Township*, 515 Pa. 542, 531 A.2d 414 (1987), National decided to again file suit challenging the Ordinance.

The trial court denied National's request for relief holding that *Ridley Arms* was not controlling because the Borough's collection fees were reasonable since they were arrived at through competitive bids, were not in excess of cost, and were for service provided without a threat to health and safety. The trial court also held that the Ordinance did not violate National's right to equal protection under the law since the classifications were reasonably related to health and safety purposes. The trial court further found that National was not being treated disparately from those entities which are excluded since they generate refuse from a single source, whereas National generates refuse from 174 different apartments, a rational distinction.[4] National appeals the trial court's Order.

National contends that the criteria for exclusion in the Ordinance, or the *de facto* criteria actually applied, is unconstitutional because it is not reasonably related to the stated purpose of protecting the health and safety of the residents. National further contends that under *Ridley Arms*, the Ordinance violates Section 1202(11) of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 46202(11), in that the Borough's fees for refuse removal are "unreasonable" since it costs them almost

---

**4.** The record reveals that in the specifications for the 1987 through 1990 contract, seven entities were excluded from the Ordinance: John Rems Corporation, 15 cubic yards a week; Seven Eleven, 9 cubic yards a week; Allen Organ Company, 25 cubic yards a week; Tyler Pipe, 11 cubic yards a week; and also Continental Telephone Company, First National Bank, and Hotel Macungie. (171a–172a, 887a).

twice as much to have the refuse removed by the Borough's contractor as it would for it to hire an independent one. National also contends that the Ordinance was applied in an arbitrary and capricious fashion because the Borough classified it as one entity for purposes of bid specifications and billing, but as 174 entities for the purpose of the criteria for the exclusion.

▆ National's first contention is that the criteria used for exclusion is unconstitutional because it is not reasonably related to the purpose of the Ordinance. Where the Borough acts pursuant to its police powers, such as requiring fees for essential services, such regulation is generally measured against the "rational basis" standard. *Commonwealth v. Buckley*, 510 Pa. 326, 508 A.2d 281 (1986), *appeal dismissed*, 479 U.S. 802, 107 S.Ct. 43, 93 L.Ed.2d 5 *rehearing denied*, 479 U.S. 1001, 107 S.Ct. 612, 93 L.Ed.2d 609. Therefore, the classification at issue is analyzed "to determine whether it is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation." *Snider v. Thornburgh*, 496 Pa. 159, 168, 436 A.2d 593, 597 (1981); *See also Ridley Arms; Commonwealth v. Buckley.*

▆ Moreover, the party challenging the constitutionality of an ordinance bears a heavy burden and must overcome a presumption of constitutionality. *Ridley Arms; Snider v. Thornburgh.* Legislation will not be declared unconstitutional unless it "clearly, palpably, and plainly violates the constitution." *Snider v. Thornburgh*, 496 Pa. at 166, 436 A.2d at 598; *See also Ridley Arms;*

▆ The Borough's Refuse Ordinance excludes those entities which produce more than six 21–gallon containers of refuse a week if they constitute an unreasonable burden on the Borough's garbage collector. The purpose behind its enactment was for the Borough, while it desires to control collection, to have the power to grant waivers from collection under the Ordinance where the Borough collector is unable to collect because of the volume or type of refuse,

frequency of collection, or lack of necessary equipment. In other instances, requiring collection by its collector insures that it will have sufficient volume to make collections efficiently. We believe that requiring a property owner to secure their own refuse collection service in such circumstances is reasonably related to the purpose of promoting the health, safety and welfare of the citizens. As such, the criteria used to classify those who are excluded are constitutionally permissible.

■ However, National contends that the criteria used to deny it an exclusion was the fact that it was residential as opposed to commercial, a *de facto* classification not contained in the Ordinance. While the Borough treats National as residential, it does so to determine whether National meets the criteria for the amount of refuse generated, not as dispositive of whether National would be excluded from the Ordinance. There is nothing in the Ordinance which would prevent a residential customer from being excluded if it met the criteria; nor is there an exclusion merely because an entity is commercial.[5]

National's second contention is that the fees charged by the Borough are unreasonable and under the Supreme Court's opinion in *Ridley Arms*, where the Borough charges "unreasonable fees" it has the right to use its own collector. Section 1202(11) of The Borough Code provides in relevant part:

> The powers of the borough shall be vested in the corporate authorities. Among the specific powers of the borough shall be the following ...:
>
> . . . .
>
> (11) **Removal of garbage and other refuse material.** To make regulations for the care and removal of garbage and other refuse material, including the imposi-

5. Twenty-four commercial establishments in the Borough are required to have their refuse collected by the Borough. (684a).

tion and collection of *reasonable fees and charges* therefor.

53 P.S. § 46202(11) (emphasis added).

Fees charged by a municipality for services rendered are proper if they are reasonably proportional to the costs of the regulation or the services performed. *Hill v. Borough of Dormont,* 90 Pa.Commonwealth Ct. 10, 494 A.2d 15 (1985); *Phillips v. Borough of Folcroft,* 44 Pa.Commonwealth Ct. 83, 403 A.2d 194 (1979). Moreover, the municipality may not use its power to collect fees for a service as a means of raising revenue for other purposes. *Golla v. Hopewell Township Board of Supervisors,* 69 Pa.Commonwealth Ct. 377, 452 A.2d 273 (1982). The party challenging the reasonableness of the fee bears the burden of proving it is unreasonable. *Hill; Phillips.*

In *Ridley Arms, Inc. v. Ridley Township,* the Pennsylvania Supreme Court held that Ridley Township's Refuse Collection Ordinance imposed "unreasonable" fees in violation of Section 1502 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. § 56527, which called for "reasonable fees and charges" for refuse collection. This provision is essentially the same as Section 1202(11) of The Borough Code which governs the present case in that they both require "reasonable fees and charges."

In *Ridley Arms,* the plaintiff operated a 241 unit apartment complex in Ridley Township and the township operated its own refuse collection system. The township ordinance did not provide an exclusion for residential apartment houses, however, it specifically excluded commercial entities such as shopping centers, supermarkets, manufacturers, hotels and restaurants, requiring them to dispose of their own refuse. The Ridley Arms complex produced 90 cubic yards of refuse weekly. Since such a volume would require three pick ups a week, Ridley Arms was reluctant to have the township dispose of its refuse because it could only pick up twice a week. *Id.*

Moreover, since the township's machinery could only handle smaller dumpsters, collection by the township would require Ridley Arms to use eighteen dumpsters a week instead of five. As a result, Ridley Arms would be required to purchase the additional dumpsters which would result in the loss of valuable parking spaces. Rather than have the township remove its refuse, Ridley Arms opted to have a private hauler remove the refuse while still paying the township for services which it did not receive. *Id.*

While it held that the classification of residential and commercial users bore a rational relationship to the governmental purpose of safe and economical collection of refuse, our Supreme Court also held that the fees imposed on Ridley Arms were in fact unreasonable. The Court stated that "the payment of approximately $58,000.00 to government for the performance of services which can be, and actually were provided by the private sector for approximately $23,000.00, less than half the amount charged by government, is not 'reasonable,' and is therefore a violation of the First Class Township Code." *Ridley Arms*, 515 Pa. at 549, 531 A.2d at 417 (footnote omitted) (emphasis added).

In the footnote to the above passage, the Court noted that Ridley Arms paid 18.9% of the total fees the township collected whereby the cost of actually collecting the refuse from them was only between 5% and 9.5% of total revenue. Thus, Ridley Arms paid twice as much as the actual cost of services provided to them. *Id.* 515 Pa. at 549 n. 6, 531 A.2d at 417 n. 6.

The Supreme Court went on to state that:

Our determination today ... does not reduce the broad latitude which government traditionally has enjoyed under an Equal Protection analysis in determining which services it deems essential to provide for its citizens....
We do, however, observe that governmental powers have always been circumscribed by a requirement of reasonableness in relation to purpose, and here, a statutory requirement of reasonableness of cost.

... If government cannot provide services at least of a quality and at a cost commensurate with similar services provided by private enterprise, it is, by definition, unreasonable to utilize tax dollars for that purpose. That many have lost sight of that patently obvious idea is as unfortunate as it is surprising.

*Ridley Arms,* 515 Pa. at 549–550, 531 A.2d at 418.

A review of the facts in the present case convinces us that *Ridley Arms* is factually distinguishable from the situation here. Although National has received bids that were priced at nearly half of what the Borough charges, unlike the property owner in *Ridley Arms,* National is actually paying *less* than it costs the Borough to provide the services it is receiving.

Clarence Mohr, Secretary for the Borough, testified that under the last contract, the Borough's contractor charged more per unit to remove refuse from National than it did for other residents in the Borough.[6] (697a–698a). Once the contract price for refuse removal was established, the Borough would divide up the cost equally among the total number of units to be serviced in the Borough. (673a–674a). Mr. Mohr acknowledged that since each unit in National's complex pays the same fee as the other residents of the Borough, the other Borough residents are in fact subsidizing the cost of removing National's refuse. (698a). He stated that "the council of the Borough felt strongly enough about wanting to control how the garbage is collected in town that they were willing to allow that to occur." (698a). This situation is unlike that in *Ridley Arms* where

---

6. The "actual cost" of service is determined by the amount the contractor bid on that portion of the proposal specifying removal of refuse from National. In the Borough's 1981–1982 "Specifications and General Instructions for the Collection and Disposal of Refuse", the specifics were broken down into two collections; A) Collection of 633 individual pick up units, and B) Collection of dumping containers which serve 174 apartment units, those owned by National. (766a, 778a). For each subsequent bidding year or years, the specifications were broken down the same way, the number of individual pick up units and National's 174 unit apartment complex. (795a, 802a; 822a, 830a; 850a, 858a; 879a, 887a). The bidders would fill in both blanks and come up with a total figure which was used to award the bid.

the apartment complex paid twice as much as the cost of services rendered it. Here, National pays less.

Moreover, as the trial court found, the Borough's contracts to dispose of the refuse were awarded following competitive public bidding, and the Borough did not add any additional charge in the way of profit or administrative expenses. (674a). Since the cost of removing refuse was determined through competitive bidding and because National pays less than the amount charged the Borough to remove the refuse, thereby not subsidizing other residents, we find that the Borough's fees are reasonable as applied to National.[7]

National's third contention is that its treatment as one entity for the purposes of bid specifications and billing, and as 174 entities for purposes of the exclusion is an unreasonable interpretation of the Ordinance. We agree. The Borough treated National as a separate entity from the other individual residents for the purpose of soliciting bids. *See* Footnote # 6. However, when National asked to be excluded under the Ordinance, the Borough treated them as 174 individual residents when it came to the amount of refuse necessary for an exclusion.

Under the Ordinance, an entity may be excluded if it generates more than six 21–gallon containers of refuse a week and constitutes an unreasonable burden on the Borough's garbage collector. Six 21–gallon containers contain approximately one-half yard of refuse. (132a). The refuse generated by National is stored prior to pick up in 13 bulk commercial containers commonly referred to as "dumpsters," which generate approximately 45 cubic yards of

---

7. If National can establish that there is a "built in" subsidy for the homeowners in the form of a substantially higher bid price than it actually costs the contractor to remove National's refuse, the fees charged them would be susceptible to a challenge under *Ridley Arms Inc.*

However, in the present case, National has failed to allude to any evidence that the bid price for its service was substantially higher than the contractor's actual cost to provide the service. Merely showing that it could obtain such service elsewhere at a better price is not enough.

refuse a week. (154a–155a). National as a whole therefore, generates 90 times the amount required for exclusion under the Ordinance. However, when the Ordinance is read, as the Borough does, to include each individual apartment as an entity, National would be required to generate a total of 87 cubic yards of refuse (174 units multiplied by one-half yard), or about twice as much as they do now, in order to qualify for the exclusion. (155a–156a, 686a–687a).

We find that such an interpretation of the Ordinance is unreasonable given the fact that the Borough treats National as a separate entity for purposes of soliciting bids and billing as well as the manner in which its refuse is collected. The Borough should treat National as a single entity generating 45 cubic yards of refuse a week. However, although we find that National has satisfied the requisite criteria for exclusion based on the amount of refuse generated, we must remand to the trial court to determine whether, given that National should be treated as one entity, it constitutes an unreasonable burden on the Borough's garbage collector.

The only discussion by the trial court of this criteria is a reference to the frequency of service and to the additional cost to the Borough of not excluding the entities which were excluded.[8] Because the trial court found that National was properly considered 174 separate entities for the purposes of exclusion, it did not need to determine whether National satisfied this second criterion or if this criterion was applied differently to National than to the other excluded entities.

Therefore, given that these issues were not reached by the trial court, we will remand for the trial court to determine whether National, because of the volume of its refuse and the additional cost per unit the Borough is charged by

**8.** The trial court stated that "the plaintiff has failed to show that including the excluded entities within the Borough system would not substantially increase the cost to the Borough, because of the greater volume of trash, the nature of the trash, and the greater frequency of service...." We note that the Ordinance does not say cost to the Borough, but burden on the Borough's garbage collector.

the contractor to remove it, constitutes an unreasonable burden to the collector as provided in the Ordinance. The trial court should also determine whether this criterion is being applied to National in a discriminatory manner as compared to the other excluded entities.

Accordingly, we will affirm the Order of the trial court in part, reverse in part, and remand with directions to consider whether National is entitled to an exclusion as an unreasonable burden on the Borough's garbage collector.

## ORDER

AND NOW, this 19th day of July, 1991, the Order of the Lehigh County Court of Common Pleas dated September 24, 1990, is affirmed in part, reversed in part, and is remanded to the trial court to determine whether National is entitled to an exclusion in accordance with this Opinion.

Jurisdiction relinquished.