**MARTIN MEDIA, a California Corporation, Appellant,**

v.

**HEMPFIELD TOWNSHIP ZONING HEARING BOARD and Hempfield Township.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1995.

Decided Feb. 27, 1996.

Dwight D. Ferguson, for Appellant.

Daniel J. Hewitt, for Appellee, Hempfield Township.

Before SMITH and FRIEDMAN (P.), JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Martin Media (Martin) appeals from an order of the Court of Common Pleas of Westmoreland County that affirmed a decision and order of the Hempfield Township Zoning Hearing Board (Board) upholding the validity of a provision of Hempfield Township Zoning Ordinance No. 91–20 (Ordinance) that assesses a $100 license fee per annum for the inspection and regulation of billboards within Hempfield Township (Township). Martin owns and maintains sixty-two billboards located within the Township and has challenged the validity of the Ordinance.

The challenge raises several issues. Martin questions whether the trial court erred in calculating the net amount of revenue generated by the licensing fee; in ruling that revenue generated above the cost of administration of the Ordinance is reasonable; in upholding the license fee which represents an illegal tax; in upholding the license fee based on cost estimates, in excess of actual costs, prepared after enactment of the fee and in anticipation of litigation; and in upholding the fee where it is based on cost estimates and includes fixed costs that existed prior to enactment of the Ordinance.

In 1991 the Township enacted in the Ordinance a comprehensive scheme of regulation of the placement of signs. Section 87–107–B requires the owner or lessee of a billboard sign to pay a fee of $100 annually for a sign to continue to be a lawful use; failure to make such payment constitutes a violation of the Ordinance and subjects the sign to removal. Martin paid the fee for the

62 billboards it owned in the Township but then appealed, asserting that the fee was grossly excessive and bore no reasonable relationship to the Township's costs for regulating and enforcing the Ordinance. Following a hearing, the Board upheld the license fee. On appeal, the trial court received no additional evidence and affirmed, concluding that, although the Township's estimate overstated the costs by approximately 13 percent when certain portions of the estimate were disallowed, such an excess was not sufficiently disproportionate to require invalidation of the fee as a matter of law.[1]

## I.

At the hearing Martin first called Nicholas P. Rullo, a Zoning and Ordinance Officer for the Township, who performed some of the billboard inspections. Rullo testified that many variables such as location and accessibility affect the time required for inspection and that he estimated an average to be one hour per sign, including travel time. He stated that he had not climbed up on structures but conducted a visual inspection only. Rullo testified that more than 50 percent of the 158 billboards involved were located along the Pennsylvania Turnpike, U.S. Route 30 and certain other heavily traveled roads and that inspection of those billboards required two persons—one to drive and one to spot the billboards and make notes. He noted that the inspectors encountered great difficulty identifying owners of some signs lacking identifying placards. Although he could not justify a charge of four person-hours for an inspection of a single billboard structure with two sign faces, he maintained that one hour per sign face was a proper average figure. On cross-examination, he stated that the Board of Supervisors of the Township had directed one inspection per year and that there are approximately 400 miles of roads in the Township.

Gerald M. Answine, the Ordinance/Clerical Director for the Township, who formerly did cost estimating for a construction company, testified concerning a document headed "Billboard Sign Costs," which he had prepared in 1992 to justify the $100 per sign fee in connection with a separate legal challenge. He stated that he prepared the costs document on the basis of his officers' log sheets and his discussions with them. Further, John A. Bellisini, the Real Estate Manager for Martin, stated that about 15 municipalities in Western Pennsylvania have yearly billboard inspection fees, including West Mifflin Borough at $33 and the City of Pittsburgh at $25.

Martin's final witness was Frank Porel, a retired engineer, who had contracted with a different advertiser in 1990 and 1991 to inspect some 900 of its signs in western Pennsylvania. He took a photograph of each sign, checked the front and the back, occasionally climbed on to the posting platform and then wrote a report. If he discovered problems he detailed them and recommended measures for repair. Based on his experience conducting inspections, Porel testified that, with a good route laid out in advance, doing inspections such as those described by Rullo should take an average of ten minutes each (including travel time), writing reports should take five minutes and reviewing reports should take no more time than writing them.

When called by the Township, Rullo testified that 90 percent of the billboards are located along primary arteries. He stated that the 1992 inspection might take longer because the Township planned to photograph each sign, locate it with reference to road segment markers and complete a form report. Officials from other municipalities had told Rullo that three of the municipalities had

---

1. The present appeal is from the trial court's order following remand, after this Court determined that the trial court's original order failed to address completely the question presented to the trial court, namely, the validity of the fee in perpetuity. *Martin Media v. Hempfield Township Zoning Hearing Bd.*, 651 A.2d 1171 (Pa.Cmwlth. 1994).

Where the trial court receives no additional evidence in a zoning appeal, appellate review is limited to determining whether the board committed a manifest abuse of discretion or an error of law. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). An abuse of discretion will be found only if the board's findings are not supported by substantial evidence of record. *Id.*

no license fees and two had fees of $100 per year. On cross-examination Rullo admitted that for some inspections in 1991, no one got out of the car and in some cases the car did not stop moving.

Answine testified for the Township concerning the details of the costs document. He stated that he had his officers keep track of their time on inspections from when they left the building until they returned. For 158 sign faces, at an average of two person-hours per face, he listed 316 person-hours. That number times the hourly rate per officer of $24.63, including wages and fringe benefits, produced a figure of $7,783.08 for inspection time. Answine stated that an average of one hour per sign face was spent in the office identifying the owners and locating the signs on tax maps and preparing reports, for a figure of $3,891.54 for officers' in-office work. He testified that he spent 79 hours reviewing the reports, at a cost of $2,000.28, and he provided additional costs associated with computer time for entry of information, materials such as pens and paper, vehicle use for 158 hours and "Facility Usage" for the office time devoted to this project, estimated at $1,200. This figure was based upon an estimate of fair market value for rental of the Ordinance Office placed at $28,800 per year and 553 work hours for all office personnel for billboard administration per year. The total of these cost items was $16,725.95, or $105.86 per sign per year. Answine also stated that the policy of the Township was to conduct two inspections per year.

### II.

■ Both sides in this dispute cite *Talley v. Commonwealth*, 123 Pa.Cmwlth. 313, 553 A.2d 518 (1989), where this Court stated that a license fee is a sum assessed for the granting of a privilege; the municipality granting the license usually incurs costs, and it is reasonable to require the person seeking the license to defray costs commensurate with the expense incurred. A tax, on the other hand, produces a high proportion of revenue in relation to the costs of supervision. "[I]f a license fee collects more than an amount commensurate with the expense of administering the license, it would become a

tax revenue and cease to be a valid license fee." *Id.* at 519. The burden is on the challenger to prove that the fee is unreasonable, and all doubt must be resolved in favor of its reasonableness, to give the municipality latitude in anticipating the expense of enforcing the ordinance. *Id.* 553 A.2d at 520.

■ Martin first argues that the Township has not justified a flat fee for all billboards, no matter how different. Martin cites *American Baseball Club v. Philadelphia*, 312 Pa. 311, 317, 167 A. 891, 892, *appeal dismissed*, 290 U.S. 595, 54 S.Ct. 128, 78 L.Ed. 524 (1933), which states: "A flat fee would tend to be arbitrary and unreasonable; such a fee might be commensurate with the services provided for one person and be wholly unreasonable and oppressive when considered in the light of services rendered another." The fee involved in *American Baseball Club* was based upon an estimate of the number of police and fire fighters required to protect public safety at specific contests and exhibitions as a special service. The language cited does not apply to general regulatory schemes, such as that involved here, which have been upheld routinely. *See, e.g., Stark v. Commonwealth*, 90 Pa.Cmwlth. 80, 494 A.2d 44 (1985).

Martin next contends that the trial court erred in concluding that an overcharge of 13 percent was reasonable, again citing *Talley*. In *Talley* this Court invalidated a $100 annual license fee on motor vehicle related businesses because no evidence was presented that the challenger's automobile repair shop imposed a special burden from which the borough had a right to be relieved or that the borough provided the affected businesses any special services. Martin believes the 13 percent figure is too low but uses that figure to assert that any revenue to the Township beyond actual costs would become improper tax revenue.

In addition to the standard statement of the scope of review indicated in n. 1, Martin also asserts that a reviewing court is free to draw its own inferences and conclusions from the facts established of record, citing certain non-zoning cases. *See, e.g., In Interest of Miller*, 301 Pa.Superior Ct. 511, 515–516, 448 A.2d 25, 27 (1982), where the court stated:

"[W]e are not bound to accept findings not supported by the evidence; nor are we bound to accept the lower court's inferences from the evidence, or its conclusions law." The Township insists that the Board's findings are based upon credibility determinations, which are reserved exclusively to the Board and may not be disturbed on appeal.

This Court is bound by credibility determinations of the tribunal whose opinion is under review, but the Court conducts its own review of the evidence and determines, as a matter of law, whether the findings of fact are supported by the evidence. In its decision the Board expressly accepted the listing of costs in the Township's costs document and found that the actual cost to the Township for the billboard inspection program was $16,725.95, or $105.86 per billboard. It found further that the Township's plan to inspect billboards twice yearly would double the actual cost to $211.72 per billboard. Board's Decision, Findings of Fact 27 and 28.

### III.

This Court concludes, as did the trial court, that the cost item for "Facility Usage" has no place in the calculation of the Township's actual costs. Although the Township doubtless incurs costs in operating and maintaining the building, such costs have nothing to do with a hypothetical fair market rental value, and no evidence of any actual costs was presented. The record fails to support this cost item, not because such costs were fixed before the Ordinance came into being as the trial court reasoned, but because it has no relation to actual cost.

The Board's finding as to the calculation of the officers' time for inspections also is not supported in the record. The Board found that the majority of the billboard signs are located along certain highly traveled roadways within the Township. Rullo testified that two officers are needed for those inspections, but in other circumstances one officer was sufficient. The Board nevertheless accepted the Township's calculation of time based on the use of two officers for one hour for each of the 158 signs.

A related point concerns the inspection time for a single billboard structure with two sign faces. There was no dispute to the testimony of Bellisini that many of Martin's billboards are double faced, that is, they have two signs on one structure. Martin emphasizes that the calculation in the costs document reflects two officers for one hour each for two signs—a total of four person-hours for inspection of one structure. During cross-examination on this point, however, Rullo testified that such an inspection would require two officers for one hour. Again, the evidence does not support the Board's finding that the calculation in the costs document represented actual costs.

Another item lacking support is the Township's "Reporting" cost of one hour per officer, totaling $3,891.54. Answine testified that this item reflected the officers' time in the office finding out who the owners of billboards were and locating billboards on tax maps and preparing written reports to him. As the trial court noted, the considerable time and effort expended in this regard would not need to be repeated in subsequent years. Because the issue before the Board was the validity of the billboard license fee in perpetuity, this substantial non-recurring expense should not have been viewed as part of the actual cost of administration for future years.

The Board also placed great weight on Answine's testimony that inspections will be done twice a year, concluding that this doubled the costs listed on the costs document. This Court concludes, however, that the costs document is so fatally flawed that it can not serve as a basis for a calculation of actual costs associated with administration of the Ordinance. Despite the Township's proof, the actual costs remain an unknown quantity, and twice an unknown is still an unknown.

Martin argues that the Board erred by granting any weight to the costs document because it was a self-serving declaration, citing, among others, *Ulansey v. Juniata Park Medical Center, Inc.,* 406 Pa. 389, 178 A.2d 547 (1962) (self-serving declaration asserting reasons that the amount owing was

less than what was claimed was inadmissible; party should have produced financial records and testimony of officers and employees). The Township concedes this point, stating in its brief that the document is so tainted by the litigation as to have no probative value, but it nonetheless contends that Martin failed to prove any falsity in the testimony supporting the document. This Court agrees that the self-serving costs document did not in itself have any probative value, and the evidence that the Board could properly consider must be derived from the testimony of the witnesses.

 Finally, the Court turns to Martin's argument in the alternative that the fee for inspections has been shown to be greatly in excess of the cost for the same service by the private sector and therefore is per se unreasonable, relying upon a general rule regarding services performed by government stated in *Ridley Arms, Inc. v. Township of Ridley*, 515 Pa. 542, 531 A.2d 414 (1987). There the Supreme Court concluded that a municipal fee for trash collection at more than twice the cost of equivalent private service violated the statute authorizing first class townships to impose reasonable fees for that purpose. The Court stated further: "If government cannot provide services at least of a quality and at a cost commensurate with similar services provided by private enterprise, it is, by definition, unreasonable to utilize tax dollars for that purpose." *Id.* at 550, 531 A.2d at 418.

In this case the Board stated that it resolved the conflict in favor of the Township between Martin's evidence concerning reasonable time for inspections and the factual data and evidence submitted by the Township that inspection of a sign face takes an average of one hour with two officers participating. Although this Court might well have resolved that conflict differently, such authority rests with the Board. *Valley View Civic Ass'n.* Therefore, the Court may not sustain Martin's assertion of having proved a per se unreasonable fee on this basis.

The Court is mindful that the burden is on the challenger to show that a license fee exceeds the actual cost of administration. Martin was prevented from making a direct comparison by the Township's failure to produce proper proof of many of its costs, such as the logs that the officers maintained of their time spent performing inspections. Because the Court has determined that the Township's evidence in regard to the actual costs of its billboard administration program was in substantial portion inflated or improperly included in the calculation, the Court concludes that Martin has met its burden of showing that the fee is disproportionate to the actual costs, and therefore revenue-producing. Consequently, the order of the trial court is reversed.

### ORDER

AND NOW, this 27th day of February, 1996, the order of the Court of Common Pleas of Westmoreland County is reversed.