IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION


| | | |
|---|---|---|
| LAMAR ADVERTISING OF TENNESSEE, INC. | ) | KNOX COUNTY |
| | ) | 03A01-9609-CH-00294 |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | HON. FREDERICK D. McDONALD, |
| v. | ) | CHANCELLOR |
| | ) | |
| | ) | |
| CITY OF KNOXVILLE | ) | |
| | ) | |
| Defendant-Appellee | ) | REVERSED AND REMANDED |


LAWRENCE P. LEIBOWITZ OF KNOXVILLE FOR APPELLANT

SHARON E. BOYCE OF KNOXVILLE FOR APPELLEE


O P I N I O N


Goddard, P.J.


Lamar Advertising of Tennessee (Lamar) appeals from an order of the Chancery Court of Knox County that upheld the validity of a provision of the Knoxville City Code, Article V, Section 10-N (Ordinance) that assesses a license fee per annum for the inspection of all existing ground and portable signs within the City of Knoxville. Lamar owns and maintains 350

outdoor advertising structures within the City of Knoxville and has challenged the validity of the ordinance.

Lamar's challenge raises numerous issues. Lamar claims that the ordinance is in reality a tax and, as such, results in impermissible double taxation as to it; that the ordinance is not uniform and equal as required by the Tennessee Constitution; that the ordinance is in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States; and that the ordinance is in violation of the First Amendment of the Constitution of the United States. As already noted, the Trial Court upheld the validity of the ordinance.

In June 1986, the City of Knoxville passed an ordinance requiring an annual inspection of all existing ground and portable signs for compliance with zoning, electrical, mechanical and any other applicable codes. Article V, Section 10-N of the Knoxville City Code reads as follows:

N.    Annual inspection fees.

1.    In addition to the permit fees set forth in Section M and commencing on July 1, 1987, an annual inspection fee shall be assessed for any existing ground sign or portable sign as follows:

    a.    Signs of fifty (50) square feet and less.                          $12.00
    b.    Signs fifty-one (51) to one hundred (100) square feet..... 25.00
    c.    Signs one hundred one (101) to four hundred fifty (450) square feet......................... 50.00

2

        d.      Signs larger than four hundred
                fifty (450) square feet.....   100.00

   2.      These inspection fees shall not apply to any
           on-premises sign owned by an organization if
           said organization is exempt from taxation
           pursuant to paragraph (3) of subsection (C)
           of Section 501 of the Internal Revenue Code
           of 1954 as amended, if said organization
           submits proof of its tax-exempt status to the
           sign inspector.

   3.      The sign inspector shall make an annual
           inspection of existing ground and portable
           signs for compliance with the provisions of
           zoning, electrical, and other city codes.
           The inspector shall attach a permanent
           numbered tag to each inspected sign and shall
           maintain records of all inspected signs.

In preparation for the administration and enforcement of the ordinance, a 1987 contract was entered into between the City of Knoxville and the Metropolitan Planning Commission (MPC), whereby the MPC, as agent for the City of Knoxville, was to perform the inspection duties outlined in the ordinance. Ewing Johnson, director of long range planning for the MPC, was asked to supervise the survey of the signs for the City of Knoxville.

The MPC employees who carried out the duties under the ordinance, and who were supervised by Mr. Johnson, did not conduct electrical, mechanical or code inspections of the signs as directed by the ordinance, but only inventoried the signs. These individuals had no tools or equipment for use in the inventory, had no training in engineering and most had only a high school education. The forms completed by the survey team contained an entry for the content of the sign and if the sign's purpose was to advertise, a notation was made on the form

3

Steve Ellis was then hired as the City Sign Inspector to inspect the signs after they were initially inventoried. He had no experience or training in electrical or mechanical inspections and was not trained in the city electrical code. In fact, Mr. Ellis testified that he did not know what requirements are contained in the city electrical code relating to ground signs. Mr. Ellis conducts these sign inspections by driving to the sign location, visually inspecting the sign, often from his car, and noting on a form the date of the inspection and whether the structure was approved or disapproved by himself. Mr. Ellis conducts strictly a visual inspection.

At trial, Lamar called Steve Harb, a certified public accountant, to testify as an expert witness. Mr. Harb prepared charts concerning the amount of time that Mr. Ellis routinely spent performing his job of inspecting signs. Based upon Mr. Ellis' reports and deposition testimony, Mr. Harb came to the conclusion that Mr. Ellis spends an average of 5.478 minutes on each individual sign inspection. Mr. Harb also determined that the average cost for the City for this inspection service was $1.59 per sign.

All funds generated by this sign inspection process are placed into the general account of the City of Knoxville. The sign inspection fees are not segregated. The form which the City sign inspection bills are printed on is the same form that is

4

used for the ad valorem taxes the City levies on business. The City Finance Department has responsibility for collecting delinquent sign inspection fees and the Tax Collection Division of the City Finance Department pursues the collection of these fees in the same manner as they collect delinquent taxes.

We must first determine whether the inspection fee is actually what it purports to be or whether it is in reality a tax. In Tennessee, taxes are distinguished from fees by the objectives for which they are imposed. If it is primarily for the purpose of raising revenue, it is a tax. However, if its purpose is for the regulation of some activity under the police power of the governing authority, it is a fee. Memphis Retail Liquor Dealers' Association, Inc. v. City of Memphis, 547 S.W.2d 244 (Tenn. 1977); S & P Enterprises, Inc. v. City of Memphis, 672 S.W.2d 213 (Tenn. App. 1983).

Since a municipality incurs costs in discharging certain duties created by this type of ordinance, it is only reasonable to require those benefiting from the service to defray the costs commensurate with the expenses incurred by the municipality. It is only required that the fees bear some reasonable relation to the expense involved and it is no objection to a regulatory license that it produces more income than is required for its administration and enforcement. S & P Enterprises, Inc. v. City of Memphis, supra.

5

The City of Knoxville argues that although the fee per sign is more than the actual expense incurred by the inspection, the fee must only bear some reasonable relationship to the expenses involved. The City of Knoxville asserts that a charge of $100 for a sign inspection of a sign larger than 450 square feet is reasonable. This argument is made despite the fact that the City Sign Inspector admits that his inspections are only visual inspections and often involves never leaving his car. In support of this argument, the City of Knoxville relies upon Memphis Retail Liquor Dealers', supra.

In Memphis Retail Liquor Dealers', the Supreme Court upheld a City of Memphis ordinance that imposed an inspection fee upon wholesalers and retailers of alcoholic beverages. The Tennessee Legislature passed a statue that allowed municipalities to charge a fee for liquor inspection of no more than five percent of the wholesale price of alcoholic beverages. Pursuant to the preceding granted authority, the City of Memphis passed an ordinance which implemented the five percent inspection fee. The liquor dealers challenged the ordinance because the revenue generated by the ordinance is 200 times the cost of regulation.

In upholding the ordinance, the Court conceded that a challenge based upon the disparity in the fee charged and cost of regulation in this case might be valid if the activity regulated was anything other than the liquor business. The Court relied upon the State's inherent police power to subject the liquor

6

traffic to strict supervision or prohibition because it is potentially, if not actually, dangerous to the public health, morality and welfare.[1] Furthermore, the State Legislature authorized a five percent inspection fee on alcoholic beverages with no requirement that the fee bear any relationship to the cost of the inspection.

We find that the decision in Memphis Retail Liquor Dealers' is distinguishable from the case at bar. The signs cannot be considered harmful to the public health, morality and welfare. As a result, we hold that outdoor advertising sign inspection fees must bear a reasonable relationship to the services rendered by the municipalities.

We find the decision in Martin Media v. Hempfield Township Zoning Hearing Board, 671 A.2d 1211 (Pa. Commw. Ct. 1996), persuasive on the issue of whether the fee charged bears a reasonable relationship to the services rendered by the municipalities. The ordinance challenged in Martin Media assessed a $100 license fee per annum for the inspection and

---

[1] The Court quoted with approval a decision of the Supreme Court of Illinois which stated as follows:

> "It is true, as a general proposition, that a regulatory license fee must bear 'some reasonable relation' to the expenses involved in the supervision and inspection of the licensed business. (citations omitted.)  But this general proposition 'does not apply where the license charge is imposed on those occupations which, while they are tolerated, are recognized as being hurtful to public morals, productive of disorder, or injuries to the public such as the liquor traffic' . . . the amount of the license fee may itself have a permissible regulatory effect."

Memphis Retail Liquor Dealers' Association at page 246, quoting Lalumio v. Fasseas, 171 N.E.2d 43, 44 (Ill. 1960).

regulation of billboards with Hempfield Township.  At trial, the sign inspector testified that he conducted visual inspections only.  He also admitted that for some inspections, no one got out of the car and in some cases the car did not stop moving.  An expert testified for the plaintiff and opined that the inspection cost was much less than the fee charged.  Based upon these facts, the court struck down the ordinance.

The Court is mindful that there is a presumption in favor of validity of an ordinance, and the one questioning the validity of the ordinance has the burden of proof to show its invalidity.  S & P Enterprises, supra.  We find that Lamar has satisfied that burden and that the ordinance is in reality a tax.  As previously stated, the sign inspector did not conduct electrical or mechanical inspections of the signs as instructed by the statute.  The sign inspector conducted only visual inspections of the signs, often from his car.  Furthermore, Lamar put on proof demonstrating the disparity in the actual cost of the sign inspections and the fees charged.  The record clearly demonstrates that the sign inspection fees did not bear a reasonable relationship to the services rendered by the sign inspector.

After determining that the sign inspection fees are in reality a tax, we must next determine whether the ordinance is an impermissible double taxation.  Double taxation is prohibited by the Tennessee Constitution unless it is plain that the

8

legislature intended to tax the same property twice. Stalcup v. City of Gatlinburg, 577 S.W.2d 439 (Tenn. 1978). If a statute is enacted by the Tennessee Legislature, which allows for double taxation, the statute must contain language which plainly indicates such an intention and there is also a presumption against such an intention. Williams v. Massachusetts Mutual Life Insurance Co., 221 Tenn. 508, 427 S.W.2d 845 (1968).

Lamar pays a gross receipts tax to the City on revenue generated from leasing outdoor advertising signs. The above discussed ordinance is a second tax that Lamar must pay the City of Knoxville.[2] Thus, Lamar is subject to double taxation. The City of Knoxville points to no language that indicates the Legislature intended to double tax advertising companies. Therefore, we hold that the above discussed ordinance results in impermissible double taxation.

Since we find the first issue to be dispositive, we do not address the other issues raised by Lamar. Furthermore, it is well established that a court will not pass on the issue of the constitutionality of a statute unless it is absolutely necessary for the determination of the case and of the present rights of the parties to the litigation. West v. Carr, 212 Tenn. 367, 370 S.W.2d 469 (1963). Courts should avoid dealing with

---

[2] We do not find it necessary to decide whether the above discussed ordinance is an ad valorem tax or a privilege tax on advertising companies.

9

constitutional questions abstractly or issuing advisory opinions. State v. King, 635 S.W.2d 113 (Tenn. 1982).

For the reasons stated above, the judgment of the Trial Court is reversed. The $19,577 paid into the Registry of the Court, plus accrued interest, is directed to be paid to Lamar, and the cause is remanded to the Trial Court for such further proceedings as may be necessary and collection of costs below which are, as are costs of appeal, adjudged against the City.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Charles D. Susano, Jr., J.


_____
William H. Inman, Sr.J.

10