Frank L. RIZZO, Rae Wilson, John Mercanti, and Samuel & Paula Rosato, Appellants,

v.

CITY OF PHILADELPHIA, W. Wilson Goode, Mayor, Managing Director for the City of Philadelphia, David H. Pingree, Elizabeth Reveal, Finance Director of the City of Philadelphia, City Treasurer of the City of Philadelphia, Benjamin Blakney, City Controller for the City of Philadelphia, Jonathan Saidel, and Commissioner of Fire for the City of Philadelphia, Roger M. Ulshafer.

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 1995.

Decided Dec. 4, 1995.

Benjamin Paul, for appellants.

Alan C. Ostrow, Deputy City Solicitor, for appellees.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI and FRIEDMAN, JJ.

SMITH, Judge.

Frank L. Rizzo, Rae Wilson, John Mercanti and Samuel and Paula Rosato (collectively, Taxpayers) appeal from an order of the Court of Common Pleas of Philadelphia County (trial court) that granted summary judgment on behalf of the City of Philadelphia and its officials (collectively, City) and dismissed Taxpayers' suit challenging the City's practice of charging a fee for emergency medical services (EMS) provided by the City's Fire Department. The issue presented is whether the EMS fees charged to the public are revenue-producing and thus constitute an unlawful tax, which cannot be im-

posed in the manner that the City has employed or, in the alternative, whether an issue of material fact exists as to whether the EMS fees are revenue-raising.

The City's Fire Department has 24 EMS rescue squads which are called in on an emergency basis to fire scenes to aid police and fire personnel. Currently, the Fire Department also provides EMS assistance to the civilian population on a fee basis for general ambulance transportation and temporary medical assistance in the nature of oxygen support, emergency cardiac care and traditional first aid treatment. Before 1988 these services were provided to the civilian population free of charge.

In 1987, the City's Department of Health adopted a regulation authorizing the EMS charges in order to defray the costs of providing the services in light of budgetary constraints. The City determined the rates using a number of factors including, inter alia, cost of services and prevailing Medicare and insurance rates, as well as comparative analyses of private ambulance companies' charges.[1] Although the City sends up to four notices requesting payment, if users of the service write a letter and explain that they do not have insurance or the means to pay, they are excused from payment.

▆ Taxpayers filed a class action on behalf of those who have been charged for the EMS services seeking to enjoin the City from charging such fees in that they constitute an unlawful tax; Taxpayers further seek to recoup monies already paid. Following the close of pleadings and discovery, the City sought summary judgment. By agreement of the parties and with trial court approval, the summary judgment motion was considered prior to certifying the action as a class action. Finding that the facts were uncontested and that the City was entitled to charge reasonable EMS fees, the trial court granted the City's request for summary judgment and dismissed Taxpayers' suit. This appeal followed.[2]

Before this Court Taxpayers contend that the EMS fees are in reality not regulatory fees intended to cover the administrative costs of the EMS but instead constitute an unlawful revenue-raising tax. Taxpayers cite *City of Philadelphia v. Southeastern Pennsylvania Transp. Auth.*, 8 Pa.Cmwlth. 280, 303 A.2d 247 (1973), where the Court held that an annual $50 license fee imposed upon SEPTA buses by the City, which never inspected or did anything else to the buses, was actually a revenue-raising tax that could not be levied against SEPTA, a Commonwealth agency not subject to taxation. In *City of Philadelphia* the Court stated that in determining whether a levy under a municipal ordinance is a tax or a true license fee, "[t]he common distinction is that taxes are revenue-producing measures authorized under the taxing power of government; while licensing fees are regulatory measures intended to cover the cost of administering a regulatory scheme authorized under the police power of government." *Id.*, 303 A.2d at 251.

Contrary to Taxpayers' assertion that it is the City's burden to prove that the City Health Department's regulation authorizing the EMS charges is not in actuality revenue-raising, the Court in *City of Philadelphia* stated that the party challenging a regulatory fee on the ground that it constitutes an unlawful tax bears the initial burden of establishing that the fees were not in fact used to reimburse the municipality for its administrative or regulatory costs in providing a service. *See also National Properties, Inc.*

1. For the 1991 fiscal year, the fees charged were: $235 for advanced life support, $180 for basic life support, $50 for an EKG and $20 for oxygen. These are the maximum rates that Blue Cross, Blue Shield and Medicare will pay for the same services.

2. When reviewing an order granting summary judgment, this Court's scope of review is limited to a determination of whether there has been an error of law or an abuse of discretion. *Saft v.*

*Upper Dublin Township*, 161 Pa.Cmwlth. 158, 636 A.2d 284 (1993). In considering a motion for summary judgment, all well-pleaded facts, but not conclusions of law, in the non-moving party's pleadings must be accepted as true, and in order for the motion to be sustained, the case must be clear and free from doubt. *Saft.* Summary judgment may be based on discovery materials and supporting affidavits as well as the pleadings. *Prescott v. Philadelphia Housing Auth.*, 124 Pa.Cmwlth. 124, 555 A.2d 305 (1989).

*v. Borough of Macungie,* 141 Pa.Cmwlth. 342, 595 A.2d 742 (1991) (party challenging the reasonableness of fees charged by a municipality for services rendered bears the burden of proving that the fees are unreasonable). In the present case, the record indicates that Taxpayers have failed to meet this burden.

In a deposition taken for purposes of summary judgment, William J. McNulty, Director of Administrative Services for the City's Fire Department, testified that in April 1988 the City began charging EMS fees in order to defray the costs of the service.[3] McNulty stated that charges for the service were determined based upon several factors, including what it costs to operate the program,[4] what the region is charging and what rates the insurance industry is willing to pay. McNulty further testified that the amount of money collected has always been much less than operating costs and that the City usually could expect to collect about 20–30 percent of the EMS budget. McNulty also testified that for the 1992 fiscal year, he requested $12,950,604 for the EMS budget, and he anticipated collecting approximately $5.5 to $6 million through EMS fees during that period.

Susan Elentrio, Director of EMS for Lockheed Information Management Services Company, Inc., the billing contractor for the Fire Department, testified by deposition that the EMS charges are limited to and will not exceed the amount that Blue Cross, Blue Shield and Medicare will pay. Elentrio further testified that Lockheed also does billing for other cities' EMS services and that Philadelphia's charges are in line with those of other cities.

In view of the foregoing evidence, this Court concludes that the trial court did not err in determining that the EMS fees were reasonable.[5] Fees charged by a municipality for services rendered are proper if they are reasonably proportional to the costs of the regulation or the services performed. *National Properties, Inc.* Here, there is no evidence of record to indicate that the EMS fees collected, which are based to a large extent upon the costs of providing the service, amounted to 50 percent of the costs of providing the service. Accordingly, the record indicates that there are no issues of material fact regarding whether the EMS fees in question are in actuality revenue-raising taxes rather than valid regulatory fees.

Taxpayers cite no authority for their contention that the EMS fees are revenue raising because they are deposited into the City's general fund, and this Court's review of the law has revealed none. To the contrary, as noted in *City of Philadelphia* and *National Properties, Inc.*, the crucial factor in determining whether a municipal charge for services constitutes a valid regulatory fee is whether the charge is intended to cover the cost of administering a regulatory scheme or providing a service. Here, the EMS charges are reasonable and are lawfully imposed by the City under its police power, which allows the City to adopt regulations necessary to preserve the health, welfare and safety of its residents. The order of the trial court is affirmed.

## ORDER

AND NOW, this 4th day of December, 1995, the order of the Court of Common Pleas of Philadelphia County granting summary judgment on behalf of Appellees is affirmed.

NEWMAN, J., did not participate in the decision in this case.

---

3. McNulty testified that before 1988, during the years of the Rizzo Administration, the Fire Department did not charge EMS fees.

4. These expenses include the salaries of the personnel operating the trucks, the maintenance and supply costs for each unit and the transportation costs for each unit including gas and oil.

5. Because the EMS fees are based upon the amounts that private insurance and Medicare will pay for these services, and are directly billed to the insurers or Medicare, these fees are neither irrational nor arbitrary as Taxpayers argue. The fact that the City does not attempt to collect from individuals who state in writing that they have no insurance and cannot pay the EMS fees, does not render the EMS charges arbitrary.