**YORK NEWSPAPERS, INC., Publisher of The York Dispatch/York Sunday News and York Daily Record and Dennis Hetzel,**

v.

**The CITY OF YORK, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 31, 2003.

Decided June 5, 2003.

---

Donald B. Hoyt, York, for appellant.

Terence J. Barna, York, for appellee, York Newspapers, Inc.

Craig J. Staudenmaier, Harrisburg, for appellees, York Daily Record and D. Hetzel.

BEFORE McGINLEY, J., SMITH–RIBNER, J., and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The City of York (City) appeals from an order and supplemental order of the Court of Common Pleas of York County that determined which of numerous requested documents were public records subject to rights of access under the Act commonly known as the Right–to–Know Act (Act), Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4,[1] and refused and denied the City's petition for fees from two newspapers. The City questions whether the trial court erred in finding that the City is not entitled to reimbursement for the labor costs involved in searching for two newspapers' extensive request for documents.

## I

A reporter for York Newspapers, Inc., publisher of the York Dispatch and York Sunday News, was investigating events surrounding civil disturbances in the City in 1968 and 1969 and two unsolved homicides in 1969 involving a young African–American woman and a white City police officer. On June 28, 2000, he made a detailed written request for access to information in City records in 47 specific categories relating to the period 1965–1972, including such items as correspondence from the Police Chief/Commissioner, rosters of police officers, documents relat-

---

1. The Right–to–Know Act was largely rewritten by the Act of June 29, 2002, P.L. 663, effective in 180 days, and it is now found at 65 P.S. §§ 66.1–66.9. The present case is governed by the Act before that amendment.

ing to the establishment, operation and dissolution of the canine corps, Pennsylvania Crime Commission reports related to the 1968 and 1969 disturbances and records relating to court cases. When the City did not respond by July 6, 2000, York Newspapers filed an appeal in the trial court under the Act. The City filed an answer stating that the records were discarded, purged or "retired," meaning stored in the attic of City Hall among some 500 disorganized boxes and that seven days was not a reasonable response time. In new matter it asserted that some requested items were not public records because they involved police investigations or were protected under an order of a judge supervising a grand jury. In October 2000 the York Daily Record and its publisher Dennis Hetzel were granted leave to intervene.

An agreement was reached concerning twenty-one categories of documents on August 10, 2000, before a hearing scheduled before Senior Judge Joseph E. Erb. On September 12, 2000, the City Solicitor and Police Captain Ressler met with reporters from The York Dispatch and the York Daily Record and presented them with stacks of documents for inspection, which were said to have come from 42 boxes that had been searched of some 700 boxes in the City Hall attic. Captain Ressler provided invoices to each of the newspapers for $960.23 for overtime hours spent by police personnel in searching through the 42 boxes. The City indicated it would not search any remaining boxes until the invoice was paid.

Hearings were held in November 2000, and on April 27, 2001 Judge Erb issued an order establishing a procedure for conducting the search. After a petition was presented to him, Judge Erb issued orders June 8 and July 20, 2001 directing that counsel for the parties might be present during the search. On November 2, 2001, York Newspapers filed a petition for contempt essentially alleging that the City had not cooperated with efforts to schedule a search. On November 28 Judge Erb visited the attic of City Hall with counsel for both parties and police personnel; that day he ordered that counsel for the newspapers be permitted to review boxes that had been searched already. On December 3, 19 and 20, 2001, counsel for the newspapers conducted a search of the boxes in the attic.

In February 2002 the City submitted a supplemental memorandum of law in support of its charge for $960.23. On March 8, 2002, counsel presented to Senior Judge Emanuel A. Cassimatis for *in camera* review documents as to which they could not agree. After oral argument, the City submitted a supplemental exhibit detailing its request for an additional $15,432.26 in fees for time police personnel spent searching records, for a total request of $16,392.49. On June 14, 2002, Judge Cassimatis issued an extensive opinion and order determining which documents were public records subject to access, some with redaction, and which were not. Judge Cassimatis also rejected the City's claims for fees for time spent searching the records.

The trial court stated that the City had presented no authority for passing on the cost of searching for and gathering the requested documents, which the court said was attributable to the disorganized manner in which the records were maintained and was not the fault of the newspapers. Cases cited by the City approving passing on of costs so long as they were commensurate with expense of administration were held to be inapplicable because they related to identifiable services provided by government agencies, not to searches under the Act. Cases under the Act held that the reasonable

costs of copying might be passed on to persons making the request. Although cases cited by the City approved charges where municipalities acted commercially as a provider of refuse collection or emergency medical services, here the City was attempting to charge for services that it should already have been providing. The court specified in its opinion and repeated in its supplemental order of June 17, 2002 that the City might pass on a reasonable cost of copying of $0.25 per page. The City appeals only from the denial of reimbursement.[2]

## II

■ The City first asserts that under the Act an agency may pass on reasonable administrative costs incurred in a unique, extensive search for public documents. It quotes former Section 3 of the Act, which provided the right of a citizen to take extracts or make copies of public records while in the control of the lawful custodian and also provided: "The lawful custodian of such records shall have the right to adopt and enforce reasonable rules governing the making of such extracts, copies, photographs or photostats."[3]

The City argues that it is established that an agency may charge reasonable fees in connection with a citizen's request for production of documents under the Act. It cites *Baravordeh v. Borough Council of Prospect Park,* 699 A.2d 789 (Pa.Cmwlth. 1997), which held that a municipal resolution that provided for a charge of $0.25 per page for copies of requested documents was reasonable.[4] The City asserts that its discretion in handling records includes a right to delineate the means by which to disseminate information to a citizen at the citizen's cost, citing *Hoffman v. Pennsylvania Game Commission,* 71 Pa.Cmwlth. 99, 455 A.2d 731 (1983) (holding that the Court would leave the method of reproduction of information to the discretion of the agency, whether by means brought to it by the applicant or by means at hand at the agency at the applicant's cost).

Further, the City notes that in *Mergenthaler v. State Employes' Retirement Board,* 33 Pa.Cmwlth. 237, 372 A.2d 944 (1977), *confirmed after reargument,* 33 Pa. Cmwlth. 237, 381 A.2d 1032 (1978), the Court held that the requester could have access to the records after confidential data was removed at the requester's expense. In *Mergenthaler* a citizen sought access to names and addresses of retired state workers, and such information existed in files that contained confidential information. In *Township of Shenango v. West*

---

2. Section 4 of the Act formerly provided that any citizen denied any right granted by Section 2 or Section 3 might appeal, and if a court determined that such denial "was not for just and proper cause under the terms of this act," the court should enter a proper order for disclosure. The present case, however, involves a question of law as to the propriety of a fee charged by a municipality under the Act, and the Court's review of questions of law is plenary. *Smith v. Manson,* 806 A.2d 518 (Pa.Cmwlth.2002).

3. Section 3 of the Act was repealed by Section 3 of the Act of June 29, 2002, P.L. 663. See now Sections 3.1–3.5, added by Section 4 of the same Act, 65 P.S. §§ 66.3–1–66.3–5.

4. The City also cites *Hull v. Pennsylvania State Police,* 768 A.2d 909 (Pa.Cmwlth.2001), but that case held that an inmate's request for his criminal record history was governed by an act specific to that information, which authorized a particular fee, and not by the Right–to–Know Act. Similarly, in *Pennsylvania State Ass'n of Township Supervisors v. Department of General Services,* 666 A.2d 1153 (Pa.Cmwlth.1995), *aff'd,* 547 Pa. 160, 689 A.2d 224 (1997), the Court approved a small fee to an organization designated to disseminate joint purchasing information but only after determining that the department would comply with direct requests under the Act.

*Middlesex Area School Dist.,* 33 D. & C.3d 515, 520 (Com.Pl.1984), a trial court held that a school district should not be required "to have its personnel work for others making photocopies" of 600 pages of records rather than requiring the requester to bring copying equipment and make its own copies. The City argues that this principle applies to making searches as well, where the City did not know if the records existed and to find out police personnel had to search a secured area.

In *Dooley v. Luzerne County Board of Assessment Appeals,* 168 Pa.Cmwlth. 242, 649 A.2d 728 (1994), although the Court overturned a policy of not permitting access to the original assessment records, it also recognized "that there may be rare situations where examination and inspection may be rendered 'impossible' because of the record's format or some onerous prohibition not addressed by the Act." *Dooley,* 649 A.2d at 729, n. 2. The City views this as one such rare case. Also, in *Sierra Club v. Pennsylvania Public Utility Commission,* 702 A.2d 1131 (Pa. Cmwlth.1997), *aff'd,* 557 Pa. 11, 731 A.2d 133 (1999), the courts approved a policy of passing on the charges of court reporters who created hearing transcripts, which tended to be voluminous, where the court reporters had better resources for copying and were being compensated for professional services as well as for reproduction. The City argues that circumstances are similar here because the newspapers made a voluminous request for materials spanning seven years and including documents over twenty-five years old and police personnel had to be present and to conduct the search because many of the documents were within the scope of an ongoing murder investigation by the District Attorney's office.

The newspapers respond that the Act provided unequivocally in Section 2, 65 P.S. § 66.2, that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania," limiting the right of examination only by the requirement that it take place at reasonable times. Further, Section 3 provided for the custodian to make reasonable rules governing the making of extracts, copies, photographs and photostats, but nothing in the Act provided authority for an agency to charge a citizen making a proper request for overtime labor charges allegedly incurred in gathering and processing the public records. In *Dooley* the Court held that denial of access to original assessment cards and a charge of $1 for each copy, even when defended as necessary to combat loss, violated the Act. The newspapers assert that the records were stored in an open area along with old uniforms and office equipment and that the grand jury went through the boxes months earlier. When the trial court finally ordered that counsel be permitted to inspect boxes directly, they did so in less than three days.

Contrary to the City's argument, in *Hoffman* the Court did not address labor charges for review and gathering of public records; rather, the Court held simply that the Act did not permit a citizen to compel an agency to provide records in a specific form. In *Dooley* the Court stated that the agency's discretion was limited to reproduction procedures and costs, and in *Baravordeh* the Court approved a small charge per page for copying and no other charges. In *Mergenthaler* the Court approved redaction of confidential information at the requester's expense before access was provided, but it did not address labor charges for searching the documents. Similarly, *Shenango Township* involved only fees for copying records. Also *Sierra Club* involved only the issue of reasonable rules and regulations governing reproduc-

tion of court reporter transcripts, and it approved costs beyond reproduction cost only in the context of litigation before an agency where the transcript was created under a contract pursuant to a pre-existing regulation and the contract required persons desiring copies to purchase them from the court reporters.

The Court agrees that the cases invoked by the City do not support a principle that an agency may charge a requester for labor costs for searching or for gathering public records that are subject to access under the Act. All of the cases cited except *Mergenthaler* concern aspects of providing for costs of reproduction, which is not at issue in this case. In *Mergenthaler* the Court approved providing access to certain documents that existed only after confidential information was redacted at the requester's expense. That, however, did not constitute a broad approval for charging fees for searching for documents in the first instance. As the trial court noted, the right of access under the Act could be effectively denied in many cases if agencies were allowed to assess the fees charged by the City here.

■ The City also argues, however, that under common law an agency may pass along costs that it incurs so long as they are commensurate with the cost of administration. It cites *Rizzo v. City of Philadelphia*, 668 A.2d 236 (Pa.Cmwlth.1995), among others in support. In *Rizzo* the Court approved summary judgment in favor of the City in a challenge to fees assessed for ambulance and emergency medical services, where depositions showed that the amounts collected were much less than operating costs. As the newspapers note, the Supreme Court stated in *Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987), that in cases where the Act has been applied the common law right to inspect documents has been regarded as superseded by the Act. The Court agrees that the issue of fees for labor charges for searching for and gathering public records must be decided under the Act, not under common law principles regarding unrelated circumstances. The order of the trial court is affirmed.

### *ORDER*

AND NOW, this 5th day of June, 2003, the order of the Court of Common Pleas of York County is affirmed.