**SAFE AUTO INSURANCE COMPANY, Appellee,**

v.

**Melody BERLIN and McKean Hose Company, Appellant.**

**Safe Auto Insurance Company, Appellee,**

v.

**Melody Berlin and McKean Hose Company, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 20, 2009.
Filed March 5, 2010.

Bethany A. Blood, Erie, for McKean Hose, appellant.

Matthew J. Parini, Erie, for Berlin, appellant.

Charlene M. Foose Geyer, Murrysville, for Safe Auto, appellee.

BEFORE: BENDER, SHOGAN and FITZGERALD *, JJ.

OPINION BY BENDER, J.:

¶ 1 Melody Berlin and McKean Hose Company (collectively, the Appellants) appeal the trial court's entry of a declaratory judgment in favor of Safe Auto Insurance Company (Safe Auto) determining that Safe Auto has no obligation to reimburse the McKean Hose Company for the cost of an emergency rescue it conducted on Berlin's behalf. The Appellants contend that the language of Safe Auto's policy is ambiguous and that when interpreted in favor of the insured, the policy mandates the

* Former Justice specially assigned to the Superior Court.

extension of Berlin's coverage to the expenses the Hose Company incurred. Upon review of the policy's language, we find no merit in the Appellants' claims. Accordingly, we affirm the trial court's entry of declaratory judgment.[1]

¶ 2 McKean Hose Company is a volunteer firefighting company that provides emergency services to McKean Township, Erie County. The Hose Company's claim arises out of a single vehicle auto accident in which Berlin's car skidded off the road, requiring emergency rescue. During the course of the rescue, the Hose Company used emergency equipment and supplies including eight flares, two hand lights, four hand tools, one generator, one set of cribbing and a hose truck. The supplies expended were valued at $1,194. One week after the rescue, on April 10, 2007, the Hose Company attempted, through Pennsylvania Fire Recovery Services, to obtain reimbursement for that amount from Safe Auto, billing the company for coverage under Berlin's policy. When Safe Auto did not respond, the recovery service followed up with a second invoice dated June 28, 2007. The parties engaged in no further communication until February 11, 2008, after Safe Auto had commenced the underlying action and served process on the Hose Company.

¶ 3 Safe Auto's complaint named both Berlin and McKean Hose Company as defendants and both filed answers and new matter. In addition, McKean Hose Company filed a cross-claim against Berlin seeking payment of the amount alleged due for emergency services and Berlin filed a corresponding response denying liability. Following discovery, all parties filed motions for summary judgment. Berlin asserted, as she does in this appeal,

that the costs incurred by McKean Hose Company are consequential damages not specifically excluded by the language of Safe Auto's policy that must, therefore, be included as property damage covered by the policy. McKean Hose Company argued similarly that the language of the policy is circular and therefore ambiguous, requiring that its claim be accepted as one for covered property damage. Safe Auto argued to the contrary that McKean Hose Company sustained neither property damage nor consequential damages recognized by the policy and that the expenses it sustained are merely its costs of operation and are not covered by the policy language. The trial court, the Honorable Ernest J. DiSantis, Jr., accepted Safe Auto's interpretation of the policy, granting its motion for summary judgment and denying those filed by Berlin and the McKean Hose Company. Berlin and the Hose Company then filed these companion appeals raising similar questions on appeal. Berlin characterizes the questions for our review as follows:

1. Whether the trial court erred in finding the insurance policy issued by Safe Auto Insurance Company to Melody Berlin is unambiguous when the definitions that explain what damages are covered use the same word it is defining in its definition and where the definitions reference other definitions until the definitions come full circle back to the original term?

2. Whether the trial court erred in finding the auto insurance policy did not cover damages caused by Melody Berlin in an auto accident where the policy specifically and expressly excludes damages such as exemplary

---

**1.** The respective defendants raise substantially similar issues on appeal. Accordingly, we have consolidated their appeals, *sua sponte.*

Thus, this memorandum is intended to resolve all claims at both docket numbers.

damages but fails to specifically exclude consequential damages[?]

Brief for Cross Appellant, Appellee Melody Berlin, at 8–9.

¶ 4 McKean Hose Company emphasizes differing aspects of the insurance contract and also raises policy concerns as follows:

1. Did the trial court err when it found that Safe Auto does not have a duty under the insurance contract issued by Safe Auto to Melody Berlin to reimburse McKean Hose Co. for the damages incurred by McKean Hose Co. during its response to the scene of a motor vehicle accident caused by the insured, Melody Berlin, because (a) the definition of "property damage" in the insurance policy issued by Safe Auto to Melody Berlin is ambiguous and (b) the insurance policy issued by Safe Auto to Melody Berlin excludes damages such as exemplary damages, but fails to specifically exclude consequential damages, and therefore covers damages charged to the insured, Melody Berlin, by McKean Hose Co. for its response to the scene of a motor vehicle accident caused by the insured?

2. Did the trial court err in finding that McKean Hose Co. cannot be reimbursed for emergency medical services which are reasonable, necessary and consistent with customary charges for such services and equipment?

3. Did the trial court err in finding that, because McKean Hose Co. provides a public service, it may not recover from Melody Berlin, through her insurance company, Safe Auto, the fees, costs and expenses for the services it provided to Melody Berlin under the doctrine of unjust enrichment?

Brief for Appellant, McKean Hose Company, at 3.

¶ 5 Finally, Safe Auto posits the following counter statement of the questions:

I. Did the trial judge appropriately exercise his discretion and not commit an error of law in finding that Safe Auto Insurance Company has no duty under the insurance contract between Safe Auto and Melody Berlin to pay for the costs that McKean Hose Company claims to have incurred while responding to the scene of the motor vehicle accident involving Berlin?

A. Did the trial judge properly exercise his discretion and not err in finding that the language of the insurance contract between Safe Auto and Melody Berlin was not ambiguous?

B. Did the trial judge appropriately exercise his discretion and not err in finding that the costs claimed by McKean Hose Company are not consequential damages or any other damages for which Safe Auto would be liable to pay under the insurance contract between Safe Auto and Melody Berlin?

II. Did the trial judge appropriately exercise his discretion and not commit an error of law in denying McKean Hose Company['s] Motion for Summary Judgment?

Brief for Appellee, Safe Auto Insurance Company, at 1.

¶ 6 Upon consideration of the record, which includes the insurance policy at issue, as well as the trial court's opinion, we conclude that Safe Auto's counter statement of the questions most accurately summarizes the legal issues for our consideration, stripped of the argument apparent in the statements offered by Berlin and the McKean Hose Company. Accordingly, although we shall remain cognizant of the positions those parties assert, we look to

Safe Auto's counter statement as a template of the issues for disposition.

■ ¶ 7 In this case, the parties' claims test the construction of the insurance policy issued to Berlin by Safe Auto. The trial court disposed of their claims in response to the parties' respective motions for summary judgment.

"Generally, the proper construction of a policy of insurance is a matter of law which may properly be resolved by a court pursuant to a motion for summary judgment." *Nationwide Mut. Ins. Co. v. Nixon*, 453 Pa.Super. 70, 682 A.2d 1310, 1313 (1996). Thus, the issue of whether a claim is within a policy's coverage or barred by an exclusion is properly determined provided that the policy's terms are clear and unambiguous so as to preclude any issue of material fact. *See Butterfield v. Giuntoli*, 448 Pa.Super. 1, 670 A.2d 646, 651 (1995).

As with all questions of law, our scope of review of a trial court's order granting summary judgment is plenary. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the nonmoving party granting [it] the benefit of all reasonable inferences and resolving all doubts in [its] favor. We will reverse the court's order only where the appellant ... demonstrates that the court abused its discretion or committed legal error.

*Lewis [v. Philadelphia Newspapers, Inc.]*, 833 A.2d 185, 190 (Pa.Super.2003) (internal citations omitted).

When interpreting a policy of insurance, we employ an analysis which, while derived from the law of contracts, recognizes that most insurance transactions are not freely bargained between equals but are largely adhesive in nature. *See*

*Betz v. Erie Ins. Exchange*, 957 A.2d 1244, 1252–53 (Pa.Super.2008).

Insurance policies, like all contracts, are enforceable in accordance with the language used and the scope of their coverage may be determined by the court as a matter of law. *See Pappas v. UNUM Life Ins. Co. of Am.*, 856 A.2d 183, 187 (Pa.Super.2004). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. Gen. Felt Indus., Inc.*, 749 A.2d 978, 980 (Pa.Super.2000). Nevertheless, other contract principles have only limited application. Indeed, our Courts have observed on multiple occasions that " 'normal' contract principles do not apply to insurance transactions." *Drelles v. Mfr's. Life Ins. Co.*, 881 A.2d 822, 836 (Pa.Super.2005). *See also Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1139 (Pa.Super.2003) (quoting *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1351 (1978)) ("Contrary to Travelers' contention, 'normal contract principals [a]re no longer applicable in insurance transactions.' "). Rather, "[t]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa.Super.1998) (quoting *Frain v. Keystone Ins. Co.*, 433 Pa.Super. 462, 640 A.2d 1352 (1994)). [Moreover,] a court's focus upon the insured's "reasonable expectations" is not limited only to situations in which the insurance contract might be deemed ambiguous, *see*

*Pressley,* 817 A.2d at 1140. In fact, our decisions have affirmed that "regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents" insurance transactions ... are subject to a review of the totality of the underlying circumstances, *Pressley,* 817 A.2d at 1139 (quoting *Tonkovic v. State Farm Mut. Auto. Ins. Co.,* 513 Pa. 445, 521 A.2d 920, 926 (1987)). Although the parties' reasonable expectations remain "best evidenced by the language of the insurance policy[,]" *Allstate Ins. Co. v. McGovern,* 2008 WL 2120722, at *2 (E.D.Pa. May 20, 2008), a court's decision to look beyond the policy language is not erroneous under all circumstances, *see Pressley,* 817 A.2d at 1139.

*Id.* at 1252–53 (Pa.Super.2008) (footnote omitted).

*Bishops, Inc. v. Penn Nat. Ins.,* 984 A.2d 982, 989–90 (Pa.Super.2009) (footnotes omitted).

¶ 8 In this case, the applicable language of Safe Auto's policy provides as follows. Terms that are specifically defined in the "Definitions" section of the policy appear in bold type face:

**PART I—LIABILITY COVERAGE**

*INSURING AGREEMENT*

**We** will pay **damages,** other than punitive or exemplary, for **bodily injury or property damage** for which **you, a relative** or any additional driver listed in the **Declarations page** becomes legally responsible for [sic] because of an **auto accident.**

Safe Auto Insurance Company Pennsylvania Personal Automobile Policy, at 5 (Reproduced Record (R.R.) at 14a). Among the terms specifically defined, the following are pertinent to our disposition:

**DEFINITIONS USED THROUGHOUT THIS POLICY**

* * *

**Auto Accident** is an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of an auto.

* * *

**Damages** mean the cost of compensating those who suffer bodily injury or property damage from an auto accident.

* * *

**Loss, losses** means sudden, direct, and accidental loss or damage.

* * *

**Property Damage** means physical damage to, destruction of, or loss of use of tangible property.

* * *

**You, your, yourself** means the person named on the Declarations Page of this policy as the Named Insured and the spouse of that person if a resident of the same household.

*Id.* at 1–3 (R.R. at 14a) (emphasis of some defined terms removed).

¶ 9 In reliance upon these provisions of the policy, Safe Auto sought declaratory judgment on the basis that McKean Hose Company's use of emergency equipment and supplies to respond to the scene of an accident does not constitute "property damage" as defined, and similarly did not constitute a "loss." McKean Hose Company asserts that the definition of property damage appearing in Safe Auto's policy, along with those of loss and damages, is circular in that, in each case, the defined term appears in its own definition. Brief for Appellant, McKean Hose Company, at 11. Although the Hose Company argues that the definitions are thus rendered ambiguous, it fails to offer any interpretation of the policy's "Insuring Agreement" that demonstrates how the policy's syntactical

*faux pas* amounts to a tangible variance between two logical interpretations of the same language. *See Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) (quoting *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986) ("Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'")). Berlin repeats that omission as concerns the definitions of property damage and loss, but argues that the policy's definition of "damages," *i.e.*, the cost of compensating those who suffer ... property damage from an auto accident," entitles her to coverage as it was one of "those" whose resources were "either physically damaged, destroyed, [or] temporarily out of service" as a result of Berlin's accident. Brief for Cross Appellant, Appellee Melody Berlin, at 11–12. We find the respective arguments of Berlin and the Hose Company without merit.

■ ¶ 10 Initially, we note that the Hose Company is not a party to the contract between Berlin and Safe Auto. Moreover, it does not qualify as one of those covered under the policy's definition of "[y]ou, your, yourself." The Hose Company thus is not entitled to first party coverage and is limited to third party benefits to the extent that its use of resources constitutes "damages," "loss," or "property damage" incurred as consequential damages.[2] Although both Berlin and the Hose Company argue that the Hose Company's expenditure of resources qualifies as "consequential damages," we conclude that the language of the policy and the circumstances of the emergency response remove the Hose Company's claim from that category entirely.

■ ¶ 11 In addressing this issue, the trial court reasoned that "[t]he items for which McKean claims reimbursement do not fall within the contractual definitions of 'damages,' 'loss, losses' or 'property damage,' nor are they consequential damages. In fact, they are not losses or damages at all, but rather costs associated with rendering emergency services." Trial Court Opinion, 12/5/08, at 8. The court concluded accordingly that "[a]lthough McKean provided a valuable public service in this instance, that fact—although commendable—does not permit this [c]ourt to torture the contractual definitions to allow it to recover under the policy." *Id.* We concur in the court's reasoning.

¶ 12 In this case, the policy language does not expressly exclude consequential damages as it does "punitive or exemplary" damages; indeed it appears to include them under the broad grant of coverage stated in the prefatory language of the "Insuring Agreement." That section, quoted above, provides that Safe Auto "will pay damages" for which an insured "becomes legally responsible ... because of an auto accident." Thus, to the extent that the Hose Company's costs may be deemed to constitute "damages" under the policy for which Berlin becomes "legally responsible because of an auto accident," the definitions would require that they be covered under the policy. Accordingly, the determination of whether consequential damages may be payable remains subject to the interpretation of specific policy provisions defining coverage. Our application of those definitions to the circumstances here reveals that coverage for the

---

**2.** Safe Auto's policy does not define "consequential damages." The McKean Hose Company, contending that the costs it incurred in its emergency response qualify as such, cites Black's Law Dictionary, which defines the term as "losses that do not flow directly and immediately from an injurious act, but that result indirectly from the act."

cost of emergency rescue is not available to the Hose Company under Safe Auto's policy.

¶ 13 In this regard, our holding is compelled by the policy's definition of "property damage" which, clearly, the McKean Hose Company has not suffered. Safe Auto's policy requires it to tender coverage for "damages ... for property damage" for which an insured becomes liable "because of an auto accident."[3] In this context, the policy defines "damages" as "the cost of compensating those who suffer bodily injury or property damage from an auto accident[;]" hence, the viability of any claim for consequential damages under the policy depends upon whether the claimant suffered bodily injury or property damage. Thus, for example, while the owner of a structure accidentally struck by the auto of an insured may claim consequential damages for loss of use of the structure, *see* Black's Law Dictionary 416 (8th ed. 1999) (defining consequential damages as "losses that do not flow directly and immediately from [the] injurious act, but that result indirectly from the act"), others who suffered neither property damage nor bodily injury may not make such a claim. Simply stated, a third party who suffered bodily injury or property damage as a result of an auto accident with Safe Auto's insured may be entitled to payment of consequential damages resulting from the personal injury or property damages sustained. If that party sustained no personal injury or property damage, it is not entitled to consequential damages.

¶ 14 In this case, the record demonstrates that the McKean Hose Company did not sustain "property damage ... because of an auto accident" as required for payment under the policy and therefore may not claim consequential damages. As noted above, Safe Auto's policy defines "property damage" as "physical damage to, destruction of, or loss of use of tangible property." Safe Auto Insurance Company Pennsylvania Personal Automobile Policy, at 3 (R.R. at 14a). McKean Hose Company argues that its use of flares at the rescue site constituted their destruction and that its use of other equipment was in fact a "loss of use" for other purposes during the time frame of the emergency response. Brief for Appellant, McKean Hose Company, at 11–12. This contention strains the meaning of the policy's language to the breaking point and cannot be said to comport with the reasonable expectations of the insured. "Destruction of" property may be summarily defined as its total ruination. *See* THE AMERICAN HERITAGE DICTIONARY 237 (4th ed. 2001) (defining "destroy" as "to ruin completely"). Although the use of an expendable product such as a flare may be said, denotatively, to result in its destruction, connotative meaning does not extend that far—no reasonable insured conceives that his involvement in a single-vehicle auto accident results in ruination of the property of those not involved in the accident itself. The same may be said of the Hose Company's rationale, topsy-turvy in its implication, that its use of its equipment is in fact its loss of use. Accordingly, the Hose Company's suggestion that it suffered "property damage" cognizable under the policy is simply untenable.[4] Because the Hose

---

3. We shall put aside for the moment the question of liability on the cross-claim between the Hose Company and Berlin as the trial court has not yet resolved that issue.

4. In similar fashion, its contention that it sustained a loss "as the result of an auto acci-

dent" is also untenable. The policy defines an "auto accident" as "an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of an auto." Safe Auto Insurance Company Pennsylvania Personal Automobile Policy, at 1 (R.R. at 14a).

Company suffered no property damage, it cannot qualify for payment of consequential damages under the prefatory language of the "Insuring Agreement" of Safe Auto's policy.

■ ¶ 15 The Hose Company argues in addition, without reference to the language of Safe Auto's policy, that the costs of the rescue operation were "reasonable, necessary and consistent with customary charges" and therefore payable pursuant to *Rizzo v. City of Philadelphia*, 668 A.2d 236, 238 (Pa.Cmwlth.1995). Brief for Appellant, McKean Hose Company, at 14. We find no authority in *Rizzo* for the Hose Company's claim. In *Rizzo,* the Commonwealth Court addressed the claims of Philadelphia taxpayers who challenged collection of fees for emergency services by the City of Philadelphia on grounds that such fees constituted "an unlawful revenue-raising tax." *Rizzo,* 668 A.2d at 237. The trial court found, and the Commonwealth Court affirmed, that the fees charged were not in fact taxes but regulatory fees intended to defray the actual cost of services rendered. The Court concluded accordingly that the fees were legally collectible so long as the amounts charged "are reasonably proportional to the costs of the regulation or the services performed." *Id.* at 238. *Rizzo* is thus distinguishable from the case before us on multiple bases. First and foremost, the Court in *Rizzo* did not purport to address the extent to which even fees properly charged would be collectible *under a policy of auto insurance.* The fees in *Rizzo* were charged to and disputed by individual taxpayers with no apparent suggestion of what role, if any, insurance coverage might play. In addition, the fees in *Rizzo* were charged *pursuant to municipal regulation* for reimbursement of a municipal agency. The McKean Hose Company cannot lay claim to corresponding authority and has in fact conceded that no source of law in McKean Township entitles it to seek reimbursement to defray the cost of its services. Finally, the Court's decision in *Rizzo* rested upon a finding of fact by the trial court that the fees charged were reasonably proportional to the cost of the services performed. In this case, the trial court has made no such determination. Accordingly, even if the holding is *Rizzo* were otherwise applicable, the factual premise on which a recovery could be made would remain to be determined. Consequently, *Rizzo* offers no authority for the recovery McKean Hose Company seeks.

■ ¶ 16 Finally, we turn to McKean Hose Company's claim of unjust enrichment, in support of which the Company cites *Lima Fire Co. No. 1 v. Rowe,* 83 Del. 141 (C.C.P.Del.1996),[5] for the proposition that because Berlin reaped a benefit from the rescue services rendered, she is bound to reimburse the Company's expenses. Brief for Appellant, McKean Hose Company, at 16. The Hose Company asserts that the trial court was bound to apply *Lima Fire Company* to its claim for reimbursement by Safe Auto and "erred in finding that, because McKean Hose Co. provides a public service, it may not recover from Melody Berlin through her insurance com-

Even assuming *arguendo* that the Hose Company's use of its resources to respond to the scene of an emergency results in the destruction of its property, such destruction is neither unexpected nor unintentional but is the very reason for the Company's existence. Thus, the trial court was absolutely correct in its conclusion that "[i]n fact, they are not losses or damages at all, but rather costs associated with rendering emergency services." Trial Court Opinion, 12/5/08, at 8.

5. *Lima Fire Company* is not a reported decision. Moreover, as an opinion of the Court of Common Pleas, it is not binding on this Court.

pany...." *Id.* We do not find the provision of a public service to be controlling of the extent to which a party may be compelled to reimburse costs incurred in rendering that service. Rather, that issue appears to be controlled by the Commonwealth Court's holding in *Rizzo* such that an appropriately constituted entity rendering service to the public may, when authorized by ordinance or regulation, collect fees "reasonably proportional to the costs of the ... services performed." *See Rizzo*, 668 A.2d at 238. This issue has no bearing, however, on the extent to which such expenses may be billed to an insurance carrier under a policy of auto insurance the coverage of which is specified by contract. *See supra.* To·the extent that the Hose Company relies on *Lima Fire Company* to establish a basis for coverage, we find the case inapplicable. Indeed, the opinion in *Lima Fire Company* establishes that the named defendants were *individuals* (not insurance companies) whose liability for services rendered is a matter merely of evaluating the benefit conferred.[6] Although we recognize that insurance companies may have been the real parties in interest, liability was plainly premised upon the relationship between the fire company and the individuals to whom it responded and on whom it conferred a benefit. In fact, it appears that they were the only named defendants. *See Lima Fire Co.*, 83 Del. at 142. In this case, McKean Hose Company responded to Mel-

ody Berlin—not Safe Auto. Accordingly, we find the persuasive value of *Lima Fire Company* to be quite limited. For the foregoing reasons, we find no error in the trial court's denial of the Hose Company's claim of unjust enrichment against Safe Auto.

¶ 17 For the foregoing reasons, we affirm the trial court's order granting summary judgment in favor of Safe Auto and against McKean Hose Company and Berlin.

¶ 18 Summary judgment **AFFIRMED.**

---

**6.** We have previously recognized the elements of a claim of unjust enrichment as follows:

> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is *unjust*. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Stoeckinger v. Presidential Financial Corp.*, 948 A.2d 828, 833 (Pa.Super.2008) (citation omitted).