NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 20-2544

————————————

CARL HEMPHILL; MJC LABOR SOLUTIONS, LLC,

Appellants

v.

LANDMARK AMERICAN INSURANCE COMPANY

————————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-19-cv-05260)
District Judge: Honorable Gerald A. McHugh

————————————

Argued on June 24, 2021

Before: CHAGARES, Chief Judge, PORTER and ROTH, Circuit Judges

(Opinion filed: April 5, 2023)

David M. Barry          **ARGUED**
#578
104 South Wayne Avenue
Wayne, PA 19087

        Counsel for Appellants

Brian C. Bassett          **ARGUED**
Traub Lieberman Straus & Shrewsberry
71 South Wacker Drive

Suite 2110
Chicago, IL 60606

Gerald J. Valentini
Deasey, Mahoney & Valentini
1601 Market Street
Suite 3400
Philadelphia, PA 19103

Counsel for Appellee

―――――――

OPINION[*]

―――――――

ROTH, Circuit Judge

**I.**

In this insurance coverage dispute, appellant Carl Hemphill asks us to find that his liability insurer, appellee Landmark American Insurance Co., is obligated to defend him in a lawsuit by a former employee. That employee brought a panoply of claims against Hemphill in his original complaint. None is covered by Hemphill's policy with Landmark. And, for reasons discussed below, Hemphill may not demand coverage based on Landmark's earlier defense of him in a similar but unrelated lawsuit. So we will affirm the District Court's order finding Landmark had no duty to defend Hemphill.

**II.**

**A.**

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Carl Hemphill and MJC Labor (together, Hemphill) provide temporary employee placement and visa application processing services to workers from Mexico and Central America. Hemphill is insured by a miscellaneous professional liability (MPL) policy with Landmark, covering claims "arising out of [] negligent act[s], error[s] or omission[s]" "in the rendering or failure to render . . . permanent and/or temporary placement services[.]"[1]

In May 2018, former MJC client Jose Castillo filed an action against Hemphill (the Castillo Lawsuit), alleging violations of federal human trafficking, wage-and-hour, and unfair trade practices laws, as well as claims for breach of contract and unjust enrichment. Castillo alleged that he signed an employment contract with one of Hemphill's companies providing a specific start date, hours of employment, wages, and job duties. He was issued an H-2B work visa in March 2015 and expected to leave for the United States immediately, but Hemphill delayed his employment for more than a month. When Castillo eventually arrived in the U.S., Hemphill and his wife confiscated his passport; housed him in conditions he described as "filthy," overcrowded, and vermin-infested;[2] assigned him tasks outside the scope of his employment contract; and considerably underpaid him. In July, after Hemphill sent Castillo a series of hostile and threatening text messages when he did not report to work, Castillo contracted the National Human Trafficking Hotline and was connected with his current counsel. Hemphill then reported Castillo to the police, who charged him with trespassing and making terroristic threats. Castillo's lawsuit followed.

---

[1] Appx. 35–36 (Compl. ¶ 13); Appx. 77, 79.
[2] Appx. 111 (Castillo Compl. ¶¶ 135–39).

3

The parties have since settled the Castillo Lawsuit, but the reimbursement of legal defense costs, incurred in the underlying suit, remain in dispute.

## B.

Hemphill sought coverage in the Castillo Lawsuit under his MPL policy with Landmark. Landmark declined to defend Hemphill on the grounds that Castillo's allegations arose from Hemphill's intentional actions, occurring after Castillo had been placed as an employee, rather than from negligent actions in providing placement services. Hemphill then filed this action seeking a declaration that Landmark was required to defend him in the Castillo Lawsuit. The District Court agreed with Landmark's interpretation of the policy and dismissed the action under Federal Rule of Civil Procedure 12(b)(6). Hemphill appealed.

The Castillo Lawsuit proceeded to a bench trial in June 2021, after which the District Court ordered the parties to mediate. Castillo moved to conform his complaint with the evidence introduced at trial under Federal Rule of Civil Procedure 15(b)(2), arguing that the parties had tried a claim for negligent misrepresentation by implied consent. The District Court granted Castillo's motion,[3] and, on July 7, 2021, Castillo filed an amended complaint, including a negligent misrepresentation claim.[4]

---

[3] Case No. 18-1837, ECF No. 89–90.
[4] Case No. 18–1837, ECF No. 92.

4

**III.**[5]

We review a district court's dismissal under Rule 12(b)(6) de novo.[6] We also exercise plenary review over a district court's determination of the scope of coverage of an insurance contract.[7] If the underlying complaint "avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend."[8] We view the complaint's allegations as true and liberally construe them in favor of the insured.[9]

**IV.**

We first clarify the scope of our inquiry in light of Castillo's amended complaint. Under Pennsylvania law,[10] "[t]he question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."[11] While the majority of states have made an exception to the "four corners" rule when evidence puts an insurer on notice of an

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[6] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted).

[7] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citation omitted).

[8] *Id.* at 226 (citing *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997)).

[9] *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (citation omitted).

[10] The District Court properly found that Pennsylvania law applies to this action, because Hemphill and MJC resided in Pennsylvania at the time the Landmark policy was signed. *See Crawford v. Manhattan Life Ins. Co. of New York*, 221 A.2d 877, 880 (Pa. Super. Ct. 1966).

[11] *Am. & Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 541 (Pa. 2010).

unpleaded claim, Pennsylvania has not.[12] To the contrary, courts applying Pennsylvania law must not stray from the operative complaint in determining duty-to-defend issues, even when later proceedings reveal the existence of a covered claim.[13] Thus, Castillo's original complaint controls Landmark's obligations up to the time he filed his amended complaint.

We limit our inquiry to Landmark's duty to defend Castillo's original complaint, which is the parties' sole focus on appeal.[14] The District Court found that 1) Hemphill could not expect Landmark to cover him for any claim not listed in the Landmark policy, and 2) Castillo's first complaint does not allege a covered claim. Hemphill appeals both findings, but his arguments fail.

**B.**

Hemphill first argues that he had a reasonable expectation of coverage in the Castillo Lawsuit after Landmark defended him in an earlier, similar class action (the Urrutia Lawsuit). We disagree and affirm the District Court's finding that Hemphill may not claim benefit of the reasonable expectations doctrine here.

---

[12] *See Lupu v. Loan City, LLC*, 903 F.3d 382, 390–92 (3d Cir. 2018) (discussing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Comm. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)); *cf. Walter Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co.*, 881 N.W.2d 285, 304 (Wis. 2016) (Bradley, J., dissenting) (collecting cases from 31 states recognizing exception to "four corners" rule).

[13] *See Lupu*, 903 F.3d at 392.

[14] *See, e.g.*, *Trs. Of Nat. Elevator Indus. Pension, Health Benefit and Educ. Funds v. Lutyk*, 332 F.3d 188, 193 (3d Cir. 2003) (declining to address issues not raised before district court or on appeal). This Court ordered the parties to provide a status update on August 11, 2021. The parties' joint update does not state whether Landmark disputes its duty to defend the Castillo Lawsuit following the amended complaint.

"[T]he proper focus for determining issues of insurance coverage is the reasonable expectations of the insured."[15]  "[I]n most cases the language of an insurance policy will provide the best indication of the parties' reasonable expectations."[16]  An insured's reasonable expectations may occasionally prevail over the express terms of a contract,[17] but only "'in very limited circumstances' to protect non-commercial insureds from policy terms not readily apparent and from insurer deception."[18]  For example, courts have found insureds reasonably anticipated coverage where insurers hid crucial coverage terms,[19] unilaterally changed policy language,[20] or otherwise deceived them.[21]  Absent these few exceptions, "an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous."[22]

Hemphill does not argue that the Landmark policy language is facially unclear or that Landmark engaged in deceptive tactics.  Instead, he claims that the mere fact that

[15] *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997) (citations omitted).
[16] *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1309 (3d Cir. 1994).
[17] *See id.*; *see also Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 621 (E.D. Pa. 2020) (finding "a court's decision to look beyond the policy language is not erroneous under all circumstances") (quoting *Safe Auto Ins. Co. v. Berlin*, 991 A.2d 327, 332 (Pa. Super. Ct. 2010)).
[18] *Liberty Mutual Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109 n.8 (Pa. 1999)).
[19] *See Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978).
[20] *See UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 503–04 (3d Cir. 2004); *Bensalem Twp.*, 38 F.3d at 1309.
[21] *See, e.g., Downey v. First Indem. Ins.*, 214 F. Supp. 3d 414, 424 (E.D. Pa. 2016) (applying reasonable expectations doctrine where insured claimed insurer misrepresented scope of coverage); *West Am. Ins. Co. v. Park*, 933 F.2d 1236, 1238–39 (3d Cir. 1991) (applying reasonable expectations doctrine where policy language unambiguously conferred coverage but insurer invoked public policy exception and denied coverage).
[22] *Treesdale*, 418 F.3d at 344 (internal quotation marks and citation omitted); *see Millers Cap. Ins. Co v. Gambone Bros. Dev. Co., Inc.*, 941 A.2d 706, 717 (Pa. Super. Ct. 2007).

Landmark defended the Urrutia Lawsuit created a reasonable expectation that it would defend the Castillo Lawsuit. No authority supports finding a duty to defend when the insured's expectation of coverage arises solely from the insurer's conduct in another, unrelated transaction. Indeed, Pennsylvania law instructs us to "examine the totality of the insurance transaction involved" [23]—not the totality of all *other* transactions between the parties. This rule applies even when no aspects of the transaction at issue create an expectation of coverage. Here, the scope of coverage in the Landmark policy is clear. Thus, Hemphill's expectations do not carry the day.

Even if Hemphill could take advantage of the reasonable expectations doctrine, Landmark's earlier conduct could not have given him a reasonable expectation of coverage in the Castillo Lawsuit. Landmark subjected its defense of the Urrutia Lawsuit to a complete reservation of rights. In its letter agreeing to defend the lawsuit, Landmark stated that nothing in the letter, "nor any further actions taken by Landmark, should be construed as a waiver of any rights or defenses . . . that may be available now or at any point in time."[24] Hemphill could not reasonably expect that such a limited acceptance of coverage would extend to a separate, unrelated lawsuit.

**B.**

Putting aside Landmark's prior defense, the scope of its duty to defend is governed by the policy's plain language, which extends coverage only to claims alleging "negligent act[s], error[s], or omission[s] . . . in the performance of providing . . . employee

---

[23] *Treesdale*, 418 F.3d at 344 (quoting *Moessner*, 121 F.3d at 903).
[24] Appx. 208.

placement services."[25]  The question is whether Castillo's first complaint alleges

negligence by Hemphill or MJC in providing Castillo placement services.  It does not.

"[A]n insurer's duty to defend . . . [is] determined solely from the language of the

complaint against the insured."[26]  Courts determine whether a complaint states a covered

claim by looking at the factual allegations of the underlying complaint, not the causes of

action asserted.[27]  "[I]t is the potential, rather than the certainty, of a claim falling within

the insurance policy that triggers the insurer's duty to defend."[28]

The first Castillo complaint does not expressly allege a cause of action for

negligent misrepresentation.  Hemphill argues it does so impliedly by alleging facts

showing he misled Castillo about his start date and housing.  We are unpersuaded.  A

plaintiff alleging negligent misrepresentation under Pennsylvania law must show:  "(1) a

misrepresentation of a material fact; (2) made under circumstances in which the

misrepresenter ought to have known its falsity; (3) with an intent to induce another to act

on it; and (4) which results in injury to a party acting in justifiable reliance on the

misrepresentation."[29]  Castillo's unfair trade practices claim alleged that Hemphill

"deceiv[ed]" Castillo "about rental housing in which he would be living."[30]  But Castillo

does not allege that Hemphill or MJC ever represented to him that his housing conditions

---

[25] Appx. 77, 79.
[26] *Kvaerner Metals Div*., 908 A.2d at 896.
[27] *Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999) (citation omitted).
[28] *Lexington Ins. Co. v. Charter Oak Fire Ins. Co*., 81 A.3d 903, 911 (Pa. Super. Ct. 2013).
[29] *Milliken v. Jacono*, 60 A.3d 133, 141 (Pa. 2012) (quoting *Heritage Surveyors & Eng'rs, Inc. v. Nat. Penn Bank*, 801 A.2d 1248, 1252 (Pa. Super. Ct. 2002)).
[30] Appx. 134 (Castillo Compl. ¶ 380).

would be sanitary or not crowded, or that he would not have accepted Hemphill's employment offer had he known that the housing conditions were subpar. As for Castillo's start date, his allegations amount to nothing more than a breach-of-contract claim: he alleges that his contracted-for start date was delayed and that he lost money and employment opportunities as a result. Landmark expressly carved out breach-of-contract claims in its policy with Hemphill.[31] It has no duty to defend this one, or any other claim in Castillo's first complaint.[32]

## V.

For the reasons stated above, we will affirm the judgment of the District Court.

---

[31] Even if Castillo's breach-of-contract claim could somehow be interpreted to state a misrepresentation claim (it cannot), it would fail in light of the gist-of-the action doctrine. *See Knight v. Springfield Hyundai*, 81 A.3d 940, 950 (Pa. Super. Ct. 2013).

[32] For the same reasons, we reject Hemphill's argument that Landmark created a "latent ambiguity" in the policy by finding Urrutia had potentially stated a covered claim but Castillo had not.

10